1  Bruce H. Jackson (State Bar No. 98118)
       (bruce.h.jackson@bakernet.com)
2  Robert W. Tarun (State Bar No. 64881)
       (robert.w.tarun@bakernet.com)
3  **BAKER & MCKENZIE LLP**
   Two Embarcadero Center, 11th Floor
4  San Francisco, CA  94111-3802
   Telephone: +1 415 576 3000
5  Facsimile:   +1 415 576 3099

6  Patrick J. Ahern (*pro hac vice*)
       (patrick.j.ahern@bakernet.com)
7  Roxane C. Busey (*pro hac vice*)
       (roxane.c.busey@bakernet.com)
8  Karen Sewell (*pro hac vice*)
       (karen.sewell@bakernet.com)
9  **BAKER & MCKENZIE LLP**
   130 E. Randolph Dr., Suite 3500
10 Chicago, IL 60601
   Telephone: +1 312 861 8000
11
   Attorneys for Defendant
12 *Tatung Company of America, Inc.*

13                 **UNITED STATES DISTRICT COURT**

14                 **NORTHERN DISTRICT OF CALIFORNIA**

15                 **SAN FRANCISCO DIVISION**

16 | AT&T MOBILITY LLC; AT&T CORP.; | MASTER FILE No. 07-m-1827 SI |
17 | AT&T SERVICES, INC.; BELLSOUTH | CASE No. 09-cv-4997 SI |
   | TELECOMMUNICATIONS, INC.; PACIFIC | MDL No. 1827 |
18 | BELL TELEPHONE COMPANY; AT&T |
   | OPERATIONS, INC.; AT&T DATACOMM, |
19 | INC.; SOUTHWESTERN BELL TELEPHONE | Hon. Judge Susan Illston |
   | COMPANY, |
20 |
   |                        Plaintiffs, |
21 |
   |              v. | **DEFENDANT TATUNG COMPANY** |
22 | | **OF AMERICA, INC.'S NOTICE OF** |
   | AU OPTRONICS CORPORATION; AU | **MOTION AND MOTION TO DISMISS** |
23 | OPTRONICS CORPORATION AMERICA, | **PLAINTIFFS' AMENDED** |
   | INC; CHI MEI CORPORATION; CHI MEI | **COMPLAINT FOR DAMAGES AND** |
   | OPTOELECTRONICS CORPORATION; CHI | **INJUNCTIVE RELIEF** |
24 | MEI OPTOELECTRONICS USA, INC.; CMO |
   | JAPAN CO. LTD.; NEXGEN MEDIATECH, |
25 | INC.; NEXGEN MEDIATECH USA, INC.; |
   | CHUNGHWA PICTURE TUBES LTD.; |
26 | TATUNG COMPANY OF AMERICA, INC.; |
   | EPSON IMAGING DEVICES |
27 | CORPORATION; EPSON ELECTRONICS |
   | AMERICA, INC.; HANNSTAR DISPLAY |
28 | CORPORATION; LG DISPLAY CO. LTD.; |

                                                               1
                                                        Case No. 09-cv-4997 SI

1  LG DISPLAY AMERICA, INC.; SAMSUNG
   ELECTRONICS CO., LTD.; SAMSUNG
2  SEMICONDUCTOR, INC.; SAMSUNG
   ELECTRONICS AMERICA, INC.; SHARP
3  CORPORATION; SHARP ELECTRONICS
   CORPORATION; TOSHIBA
4  CORPORATION; TOSHIBA AMERICA
   ELECTRONICS COMPONENTS, INC.;
5  TOSHIBA MOBILE DISPLAY
   TECHNOLOGY CO., LTD.; TOSHIBA
6  AMERICA INFORMATION SYSTEMS, INC.,

7                    Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.      STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

II.     PRELIMINARY STATEMENT .........................................................................................1

III.    PLAINTIFFS' ALLEGATIONS .........................................................................................4

IV.     ARGUMENT .......................................................................................................................5

      A.      THE COURT LACKS SUBJECT MATTER JURISDICTION TO
ADJUDICATE THE SECTION 1 CLAIM AGAINST TUS BECAUSE
PLAINTIFFS, AS INDIRECT PURCHASERS, LACK STANDING. ......................6

            1.      The Allegations Fail To Show That Plaintiffs Are Direct Purchasers. .............7

            2.      *Illinois Brick* Bars Plaintiffs' Federal Antitrust Claims Against TUS..............9

            3.      Plaintiffs Fail To Allege Any Exception To *Illinois Brick*'s Bar. .................10

            4.      The Rule Of *Illinois Brick* Operates As A Bar and Does Not Provide
An Affirmative Theory Of Liability. ..............................................................12

      B.      THE COMPLAINT FAILS TO ALLEGE THAT TUS PARTICIPATED IN A
CONSPIRACY UNDER SECTION 1 AND THEREFORE FAILS TO
STATE A CLAIM AGAINST TUS UPON WHICH RELIEF CAN BE
GRANTED...................................................................................................................13

            1.      Plaintiffs Fail To Allege That TUS Participated In The Alleged
Conspiracy. .....................................................................................................13

            2.      Plaintiffs Fail To Allege Facts Establishing Control. ....................................16

      C.      THE CARTWRIGHT ACT CLAIM SHOULD BE DISMISSED FOR
FAILURE TO MEET THE *TWOMBLY* PLEADING STANDARD.........................17

      D.      PLAINTIFFS' "ALTERNATIVE" CLAIMS UNDER THE LAWS OF
VARIOUS STATES FAIL BECAUSE THE COURT LACKS SUBJECT
MATTER JURISDICTION AND/OR BECAUSE PLAINTIFFS HAVE
FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED. ........18

            1.      Plaintiffs' Claim Under California Unfair Competition Law Fails. ...............19

                  a.      Plaintiffs Lack Standing To Bring A UCL Claim Against TUS.........19

                  b.      Plaintiffs Have Failed To Allege Conduct That Violates The
UCL. ......................................................................................................20

i

Case No. 09-cv-4997 SI

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

2.   Plaintiffs' Claim Under Hawaii Law Fails To The Extent It Is Based On Purchases Made Before June 25, 2002. ..................................................21

3.   Plaintiffs' Claim Under Illinois Law Fails. ...................................................21

4.   Plaintiffs' Claim Under Iowa Law Fails. ......................................................23

5.   Plaintiffs' Claim Under Nebraska Law Fails. ...............................................24

6.   Plaintiffs' Claim Under Puerto Rico Law Fails. ............................................24

V.   CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*American Ad Mgmt., Inc. v. General Tel. Co.,*
 190 F.3d 1051 (9th Cir. 1999) ................................................................. 22

*Associated Gen. Contractors of Cal. v. California State Council of Carpenters,*
 459 U.S. 519 (1983) ("AGC") .......................................................22, 23, 24

*Apple Inc. v. Psystar Corp.,*
 586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................. 20

*Asahi Glass Co. v. Pentech Pharms., Inc.,*
 289 F. Supp. 2d 986 (N.D. Ill. 2003) ..................................................... 22

*Ashcroft v. Iqbal,*
 129 S. Ct. 1937 (2009) ................................................14, 18, 19, 21

*Baker v. Jewel Food Stores, Inc.,*
 355 Ill. App. 3d 62 (Ill. App. Ct. 2005) ................................................ 22

*Bell Atl. Corp.* v. *Twombly,*
 127 S. Ct. 1955 (2007) ................................................................ passim

*Belton v. Comcast Cable Holdings, LLC,*
 60 Cal. Rptr. 3d 631 (Cal. App. 2007) .................................................. 20

*Brennan* v. *Concord EFS, Inc.,*
 369 F. Supp. 2d 1127 (N.D. Cal. 2005) ................................................ 14

*Buckland v. Threshold Enters., Ltd.,*
 66 Cal. Rptr. 3d 543 (Cal. Ct. App. 2007) ........................................... 19

*Chavez v. Whirlpool Corp.,*
 113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2001) ......................................... 20

*Clark v. Cassidy,*
 636 P.2d 1344 (Haw. 1981)................................................................. 21

*Daugherty v. Am. Honda Motor Co., Inc.,*
 144 Cal. App. 4th 824 (2006) .............................................................. 19

*Delaware Valley Surgical Supply, Inc. v. Niagara Falls Memorial Medical Center,*
 523 F.3d 1116 (9th Cir. 2008) ............................................................. 11

*DSM Desotech Inc. v. 3D Sys. Corp.,*
 2009 U.S. Dist. LEXIS 5980 (N.D. Ill. Jan. 26, 2009) ....................... 22

*Freeman v. San Diego Association of Realtors*,
   322 F.3d 1133 (9th Cir. 2003) ............................................................................ 6

*Gutnayer v. Cendant Corp.*,
   116 Fed. Appx. 758 (7th Cir. 2004) ................................................................... 22

*Hackman v. Dickerson Realtors, Inc.*,
   595 F. Supp. 2d 875 (N.D. Ill. 2009) ................................................................. 22

*Hall v. Time Inc.*,
   70 Cal. Rptr. 3d 466 (Cal. App. 2008) ............................................................... 19

*Hawaii Med. Ass'n v. Hawaii Med. Svc.*,
   148 P.3d 1179 (Haw. 2006) ................................................................................ 21

*Holzrichter v. County of Cook*,
   231 Ill. App. 3d 256 (Ill. App. Ct. 1992) ........................................................... 22

*Illinois Brick. Arthur v. Microsoft Corp.*,
   267 Neb. 586 (Neb. 2004) .................................................................................. 24

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ..................................................................................... passim

*In re Ditropan XL Antitrust Litig.*,
   2007 U.S. Dist. LEXIS 78423 (N.D. Cal. 2007) ................................................. 7

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................ 18, 21

*In re Late Fee & Over-Limit Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007) ........................................................... 18, 20

*In re Potash Antitrust Litig.*,
   2009 U.S. Dist. LEXIS 102623 (N.D. Ill. Nov. 3, 2009) ............................... 22, 23

*In re Sagent Tech., Inc., Deriv. Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................................. 14

*In re TFT-LCD Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................. 24

*In re TFT-LCD Antitrust Litig.*,
   586 F. Supp. 1109 (N.D. Cal. 2008) .............................................................. 24, 25

*In re Travel Agent Com'n Antitrust Litig.*,
   2007 WL 3171675 (N.D. Ohio Oct. 29, 2007) ................................................... 14

*Int'l Bhd. of Teamsters, Local 734 v. Philip Morris*,
   196 F.3d 818 (7th Cir. Ill. 1999) ....................................................................... 22

Case No. 09-cv-4997 SI

*Invamed, Inc. v. Barr Labs., Inc.*
   22 F. Supp. 2d 210 (S.D.N.Y. 1998) .......................................................................... 15, 16

*Jung v. Ass'n of Am. Med. Colleges,*
   300 F. Supp. 2d 119 (D.D.C. 2004) ................................................................................. 15

*Kansas v. Utilicorp United, Inc.,*
   497 U.S. 199 (1990) ........................................................................................................ 10

*Kendall v. VISA U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008) ................................................................................. 11, 14

*Lee v. Dublin Manor Corp.,*
   2007 U.S. Dist. LEXIS 56703 (S.D. Ohio Aug. 3, 2007) ................................................ 18

*Lorenzo v. Qualcomm, Inc.,*
   2009 U.S. Dist. LEXIS 69843 (S.D. Cal. Aug. 10, 2009) ................................................ 20

*Marin County Bd. of Realtors, Inc. v. Eugene Pallsson,*
   549 P.2d 833 (Cal. 1976) ................................................................................................ 18

*Midwest Paper Prods. Co. v. Continental Group, Inc.,*
   596 F.2d 573 (3d Cir. 1979) ............................................................................................ 10

*Miller v. International Bus. Machines Corp. (IBM),*
   2006 WL 2792416 (N.D. Cal. Sept. 26, 2006) ................................................................ 16

*Morgan v. AT & T Wireless Servs., Inc.,*
   177 Cal. App. 4th 1235 (Cal. App. 2009) ....................................................................... 20

*Motley v. Homecomings Fin., LLC,*
   557 F. Supp. 2d 1005 (D. Minn. 2008) ........................................................................... 18

*O'Regan v. Arbitration Forums,*
   121 F.3d 1060 (7th Cir. 1997) ........................................................................................ 22

*Realnetworks, Inc. v. DVD Copy Control Ass'n,*
   No. C 08-4548 MHP, No. C 08-4719 MHP, 2010 U.S. Dist. LEXIS 1433 (N.D. Cal. Jan.
   6, 2010) ........................................................................................................................... 14

*Robert's Haw. School. Bus. Inc. v. Laupahoehoe Transp. Co. Inc.,*
   982 P.2d 853 (Haw. 1999) .............................................................................................. 21

*Sherman v. British Leyland Motors, Ltd.,*
   601 F.2d 429 (9th Cir. 1979) .......................................................................................... 16

*Southard v. Visa U.S.A. Inc.,*
   734 N.W.2d 192 (Iowa 2007) .......................................................................................... 24

*Spears v. Transcontinental Bus. Sys., Inc.,*
   226 F.2d 94 (9th Cir. 1955) .................................................................. 16

*Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.,*
   594 F.2d 730 (9th Cir. 1979) .................................................................. 6

*United States v. Bestfoods,*
   524 U.S. 51 (1998) .................................................................. 11, 16

*Wady* v. *Provident Life & Accident Ins. Co. of Am.,*
   216 F. Supp. 2d 1060 (C.D. Cal. 2002) .................................................................. 16

*Wilbur v. Locke,*
   423 F.3d 1101 (9th Cir. 2005) .................................................................. 6

*William O. Gilley Enters. v. Atl. Richfield Co.,*
   588 F.3d 659 (9th Cir. 2009) .................................................................. 14

*Wright v. General Mills, Inc.,*
   2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009) .................................................................. 18

**STATUTES**

740 ILCS 10/1 *et seq.* .................................................................. 21, 22

10 L.P.R.A. §§ 257, *et seq.* .................................................................. 24

10 L.P.R.A. § 268(c) .................................................................. 25

Cal. Bus. Prof. Code §§ 16720 *et seq.* .................................................................. 6, 17

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .................................................................. 19

Haw. Rev. Stat. Ann. §§ 480-1 *et seq.* .................................................................. 21

Haw. Rev. Stat. § 1-3 .................................................................. 21

Haw. Rev. Stat. § 480-2(e) .................................................................. 21

Iowa Code Ann. §§ 553.1 *et seq.* .................................................................. 23

Neb. Rev. Stat. §§ 59-801 *et seq.* .................................................................. 24

Sherman Act, 15 U.S.C. § 1 *et seq.* .................................................................. passim

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 21, 2010, at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Judge Susan Illston, in Courtroom 10, 19th Floor, of the United States District Court for the Northern District of California, San Francisco Division, Defendant Tatung Company of America ("TUS") will move this Court for an order dismissing the claims asserted against TUS in this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

This Motion is based upon this Notice, the Memorandum of Law in support thereof, Declaration of Edward Chen (attached and incorporated herein as Exhibit A) in support thereof, the declarations of Edward Chen and Michael Lai filed previously in this action (Dkt. #471 and #472), any reply submissions by TUS in support of this Motion, and such other materials and information that the Court may properly consider at or before the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs' first claim for relief, under Section 1 of the Sherman Act, 15 U.S.C. § 1, should be dismissed against Tatung Company of America, Inc. ("TUS"), because Plaintiffs are indirect purchasers and thus are barred from bringing such claims against TUS.

2.     Whether Plaintiffs' first claim for relief, under section 1 of the Sherman Act,  should be dismissed with respect to TUS because Plaintiffs fail to allege facts plausible suggesting that TUS has ever entered into, or participated in, an agreement to fix the prices of LCD Panels.

3.     Whether Plaintiffs' second claim for relief, for violation of California's Cartwright Act, should be dismissed with respect to TUS because Plaintiffs do not have standing in that they do not alleged to have purchased LCD Panels or Products from TUS.

4.     Whether Plaintiffs' third claim for relief, for violation of California's Unfair Competition Law ("UCL") and the antitrust laws of various states, should be dismissed in part with respect to TUS for lack of subject matter jurisdiction and/or failure to state a claim on which relief can be granted, and/or should be limited insofar as the claims are based on purchases that predate applicable laws of those jurisdictions.

### II.   PRELIMINARY STATEMENT

The Amended Complaint ("Am. Compl.") filed by AT&T Mobility LLC; AT&T Corp.; AT&T Services, Inc.; Bellsouth Telecommunications, Inc.; Pacific Bell Telephone Company AT&T Operations, Inc.; AT&T Datacomm, Inc.; Southwestern Bell Telephone Company (collectively, "Plaintiffs") seeks to assert a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, based on an alleged price-fixing conspiracy among manufacturers of liquid crystal display ("LCD").  (Am. Compl. at ¶¶ 1, 7). Plaintiffs are indirect purchasers with respect to TUS and therefore are barred from asserting a Sherman Act claim against TUS; thus, this Court should dismiss Plaintiffs' first claim for relief pursuant to Rule 12(b)(1). Furthermore, Plaintiffs have failed to state a claim under Section 1 against TUS under the standards articulated in *Twombly*, and thus the first claim for relief should be dismissed pursuant to Rule 12(b)(6).  Because Plaintiffs cannot state a Section 1 claim,

their California Cartwright Act claim likewise fails; thus, Plaintiffs' second claim for relief should be dismissed pursuant to Rule 12(b)(6).  Finally, Plaintiffs' third claim for relief, in which Plaintiffs allege violations of unfair competition laws and antitrust laws of various states and Puerto Rico, should be dismissed pursuant to Rules 12(b)(1) and/or 12(b)(6) because Plaintiffs lack standing to bring claims under those laws and also because they have failed to state a claim under those laws.[1]

First, based on their allegations and the undisputed facts, Plaintiffs' claim against TUS is barred under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977), which precludes indirect purchasers from suing for damages under the federal antitrust laws.   TUS is not an LCD manufacturer.   Instead, TUS's business includes: (1) purchasing and reselling finished products containing LCD Panels; (2) purchasing LCD Panels and manufacturing finished products containing LCD Panels; and (3) purchasing and reselling a limited quantity of LCD Panels for repair.  As a purchaser of LCD Panels, TUS did not purchase those panels only from Chunghwa Picture Tubes, Ltd. ("CPT"), but from many other different manufacturers.  In addition, as a purchaser of finished products containing LCD panels, TUS purchased such finished products from many different manufacturers, but not from CPT, which has never manufactured finished products.  Accordingly, because TUS was itself a direct or an indirect purchaser of LCD Panels themselves, or a direct purchaser of finished products containing LCD Panels, those customers, including AT&T, that might have purchased either LCD Panels or finished products containing LCD Panels from TUS are indirect purchasers and are barred from suing TUS for damages under *Illinois Brick*.  Finally, AT&T did not purchase any LCD panels or finished products from TUS.

Second, the allegations fail to state a claim for antitrust conspiracy against TUS and, more importantly, do not establish that TUS could be liable merely because it is allegedly a partly owned "subsidiary" of Tatung Company of Taiwan ("TT").   Plaintiffs do not allege that CPT owns and controls TUS but only that TT owns and controls CPT and TUS.  And yet, Plaintiffs seek to hold

---

[1] Defendants' Joint Motion to Dismiss the Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) (Dkt. 1558) (the "Joint Motion"), which TUS has joined and hereby incorporates by reference, sets forth the numerous grounds as to why the Complaint should be dismissed against *all* Defendants.  This separate Motion is directed to the failure of the Complaint to allege facts sufficient to state a claim for relief specifically against TUS.

TUS liable to the same extent as its sister corporation, CPT, and the other LCD manufacturers. There is no precedent for the Plaintiffs' attempt to hold TUS liable in this manner. Moreover, given that TUS is not wholly-owned or controlled by TT (and CPT is not wholly-owned or controlled by TT), Plaintiffs cannot make out a claim for liability against TUS. Indeed, to the extent that Plaintiffs have alleged that TUS was controlled by TT, and that CPT was controlled by TT, such allegations are inconsistent with the facts. TT does not now own, and has never owned, 100% or even a majority of TUS. As Plaintiffs admit, TT is a 50% owner of TUS, and TT has never owned more than a 50% share interest in TUS. (Neither has TT ever owned 100% of CPT; indeed, TT currently owns only 30% of CPT.) Thus, Plaintiffs cannot satisfy the control exception to *Illinois Brick*.

Plaintiffs have also failed to allege that TUS participated in the alleged conspiracy. To survive a motion to dismiss based on Rule 12(b)(6), Plaintiffs' Complaint must allege facts in support of their claim that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted). Plaintiffs' claim against TUS fails because, other than its conclusory and incorrect allegations of control discussed above, Plaintiffs make not a single other allegation against TUS.

Third, Plaintiffs' inability to state a claim under the federal pleading standard is fatal to the Plaintiffs' claim under the California Cartwright Act. Plaintiffs' second claim for relief should be dismissed pursuant to Rule 12(b)(6) and the standard articulated in *Twombly* and elsewhere. Finally, Plaintiffs' third claim for relief, which alleges, "in the alternative," violation of antitrust and unfair competition laws of various states and Puerto Rico, should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6), for lack of standing and for failure to state a claim.

For the above reasons, and those stated more fully herein and in the accompanying affidavits, this Court should grant TUS's Motion.

### III.   PLAINTIFFS' ALLEGATIONS

The sole allegations referring to TUS in the 69-page Complaint are set forth below:

- "Defendants engaged in conspiratorial conduct both within and outside the United States. Defendants' conduct in the United States was centered in California. … [D]efendant[] Chunghwa Picture Tubes, Ltd., …which also admitted to participating in the conspiracy, used California corporations with principal places of business in Long Beach, California (defendant[] Tatung Company of America, Inc. …), as [its] sales agent[] in the United States for LCD Products containing LCD Panels which were affected by the conspiracy. … Communications in furtherance of the conspiracy occurred within California and between California and other states." (Am. Compl. at ¶ 4).

- "Defendant Chunghwa Picture Tubes Ltd. ('Chunghwa') is a leading manufacturer of LCD Panels, with its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan, Taiwan. Chunghwa is a subsidiary of Tatung Company, a consolidated consumer electronics and information technology company based in Taiwan. Chunghwa's Board of Directors includes representatives from Tatung Company. The Chairman of Chunghwa, Weishan Lin, is also the Chairman and General Manager of the Tatung Company. During the Conspiracy Period, said defendant manufactured, marketed, sold and/or distributed LCD Panels incorporated into LCD Products sold in the United States." (*Id.* at ¶ 43).

- "Defendant Tatung Company of America, Inc. ("Tatung America") is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, California. Tatung America is a subsidiary of Tatung Company. Currently, Tatung Company owns approximately half of Tatung America. The other half is owned by Lun Kuan Lin, the daughter of Tatung Company's former Chairman, T.S. Lin. During the Conspiracy Period, Tatung America sold and distributed LCD Products manufactured by Chunghwa Picture Tubes, Ltd. to customers throughout the United States." (*Id.* at ¶ 44).

- "Defendants Chunghwa and Tatung America are referred to collectively herein as 'Chunghwa.' During the Conspiracy Period, Chunghwa and Tatung were closely affiliated,

commonly owned, controlled and dominated by Tatung Corporation, and functioned as a single enterprise and/or alter egos." (*Id.* at ¶ 45).

There are no other allegations in the entire Complaint about any act, omission, statement, product or other fact allegedly relating specifically or directly to TUS.

## IV.   **ARGUMENT**

First, Plaintiffs' allegations paint with a broad brush and, in doing so, have lumped TUS in with LCD manufacturers. Their imprecise allegations fail to rescue their claim against TUS from the rule of *Illinois Brick* barring indirect purchasers and fail to establish any exception to that rule.

Second, even if Plaintiffs' claim against TUS were not barred by the indirect-purchaser rule, the allegations brought under Section 1 fail to state a claim on which relief can be granted against TUS. Plaintiffs cannot establish that TUS is a proper defendant merely by alleging that it is "closely affiliated" with alleged manufacturers, such as Chunghwa Picture Tubes, Ltd. ("CPT"), or that TUS is "commonly owned, controlled and dominated by" Tatung Company of Taiwan (TT) (*Id.* at ¶ 45.)[2] That allegation is entirely conclusory, as it is unsupported by any factual allegations that would suggest any indicia of control by TT. In fact, the claim that TUS was the "alter ego" of "Tatung Corporation" (presumably, Tatung Company of Taiwan ("TT")) and/or "Chunghwa" (presumably, CPT[3]) is self-contradictory, given Plaintiffs' admission that TT owns only "approximately half" of TUS. (*Id.* at ¶ 44, 45.) Nor is there any factual allegation to support that any combination of these entities functioned as a "single enterprise," such as would justify disregarding the fact that TUS is, as Plaintiffs admit, a separate "California corporation[]." (*See id.* at ¶¶ 4, 44.) In sum, the mere allegations that TUS sells LCD Panels and is a subsidiary or affiliate of another entity that is a manufacturer of LCD Panels are insufficient to set forth a plausible claim for relief against TUS. Setting such allegations in a vague context of wrongdoing by other parties does nothing to raise the allegations against TUS above the speculative level and does not give rise to a claim against TUS.

For the same reasons, Plaintiffs also cannot satisfy the control exception to *Illinois Brick*.

---

[2] Plaintiffs refer to, but fail to define, "Tatung Company" and "Tatung Corporation," which are herein assumed to refer to Tatung Corporation of Taiwan. (*See* Am. Compl. at ¶¶ 43, 45.)
[3] Plaintiffs elsewhere define "Chunghwa" to mean "Chunghwa Picture Tubes, Ltd." (Am. Compl. at ¶ 43) and to "collectively refer[]" to "Chunghwa and Tatung [] America" (*id.* at ¶ 45).

Moreover, having failed to allege that TUS is or was the alter ego of TT or any other entity, and having failed to allege that TUS (either individually or "collectively" with TT) engaged in any conduct from which participation by TUS in an illegal agreement or conspiracy could reasonably be inferred, Plaintiffs, regardless of whether they are direct or indirect purchasers, have failed to state a claim against TUS. Thus, even if this Court had subject matter jurisdiction with respect to the Section 1 claim against TUS, that claim should be dismissed pursuant to Rule 12(b)(6).

Third, even if the Court had independent grounds for adjudicating any state law claim, dismissal of Plaintiffs' claim under the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et seq.*, would be warranted. That claim is subject to the same pleading standards that Plaintiffs fail to make out with respect to their Section 1 claim with respect to TUS. Thus, the Cartwright Act claim should be dismissed.

Fourth, the claims brought "[i]n the alternative" under various state antitrust laws against TUS cannot survive this motion to dismiss, as the Court lacks supplemental jurisdiction and as Plaintiffs fail to establish their standing to bring any such claims under state law.

Therefore, Plaintiffs' claims should be dismissed in their entirety with respect to TUS.

### A.   THE COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE THE SECTION 1 CLAIM AGAINST TUS BECAUSE PLAINTIFFS, AS INDIRECT PURCHASERS, LACK STANDING.

Plaintiffs are indirect purchasers and thus their claim against TUS is barred under *Illinois Brick*. A defense based on *Illinois Brick* attacks plaintiffs' standing and thus is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145 (9th Cir. 2003) ("*Illinois Brick* denies standing to indirect purchasers in many circumstances"). When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1), plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *see also Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (plaintiff bears burden of establishing standing). If an attack on subject matter jurisdiction is "factual," a defendant may rely on affidavits or other evidence that would be properly before the Court, and the non-

moving party is not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. *In re Ditropan XL Antitrust Litig.*, 2007 U.S. Dist. LEXIS 78423, *5-7 (N.D. Cal. 2007). Rather, he or she must come forward with evidence establishing jurisdiction. *Id.* (*citing Thornhill*, 594 F.2d at 733). In the present case, TUS both provides a factual attack with respect to the Court's subject matter jurisdiction over Plaintiffs' claim and shows where Plaintiffs have failed to allege facts supporting their contention of subject matter jurisdiction. Based on either one or both of these arguments for dismissal, Plaintiffs' claim against TUS is barred by *Illinois Brick*.

### 1. The Allegations Fail To Show That Plaintiffs Are Direct Purchasers.

Plaintiffs admit that they were not direct purchasers of LCD panels. In addition, Plaintiffs also admit that they purchased finished products containing LCD panels from third-party manufacturers (OEMs), which are not alleged to be part of the alleged conspiracy, and presumably are direct purchasers themselves of LCD panels. (Am. Compl. at ¶ 150, 151, 154, 155) (alleging that Plaintiffs purchased handsets from OEMs).[4] Specifically, Plaintiffs allege that AT&T Mobility was injured owing to the alleged "conspiracy to fix the price of LCD Panels" because AT&T Mobility purchased "mobile wireless handsets for resale to customers" and because "LCD Panels [were] incorporated into the LCD Products AT&T Mobility purchased for its own internal use during the Conspiracy Period, such as desktop computer monitors and notebook computers… ." (*See id.* at ¶ 5.) Plaintiffs do not allege that they purchased LCD Panels directly from any manufacturer of LCD Panels. Instead, Plaintiffs make the carefully worded (and utterly transparent) claim that "AT&T Mobility purchased mobile wireless handsets and other LCD Products containing LCD Panels manufactured and sold by [unspecified] defendants, their co-conspirators, and others." (*Id.* at ¶ 20.) Nor are the other "AT&T" entities properly alleged to be direct purchasers, as neither AT&T, Inc., nor any of its various "subsidiaries and affiliates" named in the Amended Complaint are alleged to have purchased LCD Panels, or even LCD Products, directly from TUS, any defendant, or any manufacturer of LCD Panels or LCD Products. (*Id.* at ¶ 26.) Rather, Plaintiffs claim they "purchased LCD Products … that contained LCD Panels affected by defendants' price fixing conspiracy." (*Id.* at

---

[4] Plaintiffs do not allege that they were direct or indirect purchasers of LCD Panels or LCD Products from "Chunghwa" or from any alleged affiliate or shareholder of TUS. (*See* Am. Compl.)

¶ 27.)  The linguistic gamesmanship does not allege that Plaintiffs were direct purchasers and thus does nothing to overcome the indirect purchaser rule.

Equally unavailing in circumventing the indirect purchaser rule is the allegation that AT&T Mobility (defined for this purpose as "AT&T Mobility LLC, f/k/a Cingular Wireless LLC") acquired stock of companies that "also purchased mobile wireless handsets and other LCD Products containing the LCD Panels manufactured and sold by [unspecified] defendants" and thus that AT&T Mobility "obtained all claims and rights under federal and state laws to recover any overcharges for mobile wireless handsets] suffered by those companies." (*Id.* at ¶ 21.)  Plaintiffs fail to allege that "those companies" were, themselves, direct purchasers from the defendants, let alone that AT&T Mobility or any other Plaintiff acquired *all* of the stock of "those companies" (or a controlling share therein), or obtained a proper assignment of those companies' claims such as could entitle them to pursue claims of those nonparties. Again, Plaintiffs have alleged, at most, that AT&T Mobility is an indirect purchaser of LCD Products and have failed to establish standing to sue for the alleged injuries suffered by "those companies" whose stock AT&T Mobility allegedly purchased. (*See id.*) Because by Plaintiffs' own admission they are indirect purchasers, the Section 1 claim is barred.

Furthermore, TUS is an intermediary in the distribution chain and is not, for purposes of federal antitrust claims, a proper defendant under *Illinois Brick*.  Plaintiffs allege that TUS "sold and distributed LCD Products manufactured by Chunghwa Picture Tubes, Ltd. to customers throughout the United States." (*Id.* at ¶ 44.)  However, the incontrovertible fact is that TUS did not manufacture LCD Panels but was, itself, a direct purchaser of LCD panels. Because TUS was itself a direct purchaser of LCD Panels, Plaintiffs are, at most, indirect purchasers with respect to TUS and are thus barred from suing TUS for damages under *Illinois Brick*. (*Id.* at ¶ 154 (alleging that Plaintiffs purchased LCD Products "from other handset OEMs"). Under *Illinois Brick*, such indirect purchasers cannot maintain a damages suit against intermediaries such as TUS.

The undisputed facts regarding TUS's business also demonstrate that Plaintiffs are indirect purchasers. TUS does not now nor has it ever manufactured LCD Panels and thus is an indirect purchaser, as confirmed by the undisputed facts raised in the Declarations of Edward Chen filed

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

previously (Dkt. # 471).   For example, TUS does not now manufacture, nor has it ever manufactured, LCD Panels. (Decl. of E. Chen (Dkt. #471) at ¶ 2.)  In addition, TUS purchased and resold finished products containing LCD Panels. (*Id.* at  ¶ 3.)  TUS did not purchase such finished products from CPT, but in fact purchased those finished products from many different manufacturers.  (*Id.*)  To the extent that TUS was a purchaser of finished products containing LCD Panels (LCD Products), those customers that purchased those same LCD Products from TUS were *indirect* purchasers of LCD Products. (*Id.* at  ¶ 4.)

To the extent that TUS purchased LCD Panels, TUS manufactured finished products using those LCD Panels. (*Id.* at  ¶ 5.)  To the extent that TUS purchased LCD Panels and manufactured finished products using those LCD Panels, Plaintiffs in this case would have purchased such finished products containing LCD Panels from TUS. (*Id.*) However, Plaintiffs do not allege having purchased any LCD Products from TUS.

To the extent that TUS purchased finished products containing LCD Panels, TUS was not the direct purchaser of the LCD Panels contained in those finished products. (*Id.* at  ¶ 6.)Instead, the manufacturers of the finished products were either the direct purchasers of the LCD Panels contained in those finished products, or indirect purchasers themselves. (*Id.*)  Finally, TUS purchased and resold a limited number of LCD Panels to customers for repair or replacement.  (*Id.* at ¶ 7.)

Finally, TUS has never manufactured or sold handsets containing LCD panels. (*See* Declaration of Edward Chen, ¶¶ 2-3, attached as Exhibit A hereto and filed herewith.)

Based on the facts contained in Edward Chen's declarations, which are uncontroverted by Plaintiffs' allegations, Plaintiffs were merely indirect purchasers in relation to TUS, even if they purchased LCD finished products from TUS, which they did not.

## 2.   *Illinois Brick* Bars Plaintiffs' Federal Antitrust Claims Against TUS.

*Illinois Brick* bars Plaintiffs' Section 1 claim against TUS.  In *Illinois Brick*, the Supreme Court held that an indirect purchaser is barred from seeking damages against a manufacturer for alleged violations of federal antitrust laws.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977).  Thus, indirect purchasers in a chain of distribution cannot sue for damages based on alleged

unlawful overcharges passed on to them by intermediaries who purchased directly from the alleged antitrust violator. *Illinois Brick*, 431 U.S. at 746. In construing the rule's scope, the Supreme Court stated that the rule applies broadly and that any exceptions are to be construed strictly. *See Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 208, 217 (1990) ("We think it an unwarranted and counterproductive exercise to litigate a series of exceptions [to the indirect purchaser rule]. Having stated the rule in *Hanover Shoe*, and adhered to it in *Illinois Brick*, we stand by our interpretation of § 4."). Moreover, in announcing the rule, the Court recognized that indirect purchasers, even when able to trace an injury to an antitrust violation, are not in the "preferred position as private attorneys general" intended by Congress to enforce the antitrust laws. *Illinois Brick*, 431 U.S. at 729.

Because TUS did not manufacture LCD Panels, purchased and resold finished products containing LCD Panels, purchased LCD Panels and then manufactured and sold finished products containing LCD Panels, and purchased and resold a limited number of LCD Panels for repair, any customers of TUS, including Plaintiffs, are necessarily indirect purchasers of LCD Panels or LCD Products. Accordingly, Plaintiffs' claim against TUS is barred under *Illinois Brick*.

### 3. Plaintiffs Fail To Allege Any Exception To *Illinois Brick*'s Bar.

Plaintiffs have failed to allege any of the few exceptions to *Illinois Brick*, which, in any case, are narrowly construed. *See Utilicorp*, 497 U.S. at 217. The Amended Complaint fails to allege any facts as to TUS that would satisfy an exception to *Illinois Brick*, nor could it set forth any such allegations in light of the undisputed facts. The sole exception to *Illinois Brick* that Plaintiffs might conceivably attempt to assert, the control exception,[5] cannot be made out. Plaintiffs' allegations are factually deficient and are refuted by the Declaration of Michael Lai (Dkt. #472) and thus are insufficient to set forth a claim under the control exception.

For the control exception to apply, the alleged antitrust violator must control the intermediary, by so dominating the subsidiary as to disregard its separate corporate existence. *See Midwest Paper Prods. Co. v. Continental Group, Inc.*, 596 F.2d 573, 589 (3d Cir. 1979). Here, there is no support for Plaintiffs' conclusory allegation that "[d]uring the Conspiracy Period, Chunghwa

---

[5] The other two exceptions—the cost-plus exception and the co-conspirator exception—do not apply here.

and Tatung were closely affiliated, commonly owned, controlled and dominated by Tatung Corporation, and functioned as a single enterprise and/or alter egos." (Am. Compl. at ¶ 45.) Moreover, Plaintiffs allege only that TUS is an "approximately half"-owned "subsidiary" of TT. (*Id.* at ¶ 44.) These vague allegations are woefully insufficient to invoke the control exception. First, mere allegations of ownership alone are insufficient to disregard the corporate form. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate."); *Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities."). Second, courts require additional indicia of control to allow indirect purchasers to sue under the antitrust laws via the control exception. *See*, *e.g.*, *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (barring a claim under *Illinois Brick* where plaintiffs did not allege "any facts showing that the Consortiums have any direct control over the merchant discount fee"); *Delaware Valley Surgical Supply, Inc. v. Niagara Falls Memorial Med. Ctr.*, 523 F.3d 1116, 1121 (9th Cir. 2008) (barring purchases through "independent wholesalers that were not owned or controlled by any defendant"). Accordingly, the Amended Complaint, in failing to set forth any facts with respect to TT's alleged "domin[ation] and control[]" over TUS, fails to satisfy the control exception. (Am. Compl. at ¶ 45.)

Nor would the facts support the exception, as shown in the Declarations of Edward Chen and Michael Lai. Neither TT nor CPT controls TUS, nor the manner in which TUS sets prices for LCD Panels or LCD Products (or any other items), nor did TT or CPT exert such control during the alleged Conspiracy Period. (M. Lai. Decl. (Dkt. #472) at ¶ 2.) Likewise, neither TT nor CPT plays any role whatsoever in TUS's management or operations; the same was true during the Conspiracy Period. (*Id.* at ¶¶ 2-4.) Finally, neither TT nor CPT provides any funding, loans, or guarantees to TUS, nor provided such to TUS during the Conspiracy Period. TT's ownership of CPT, on the one hand, and TUS, on the other hand, are not linked in any way. Thus, TT's separate and distinct ownership of CPT and TUS is insufficient – especially given the Supreme Court's admonition of strictly construing any exception to *Illinois Brick* – to establish TT's control over TUS.

In addition, TT does not now own nor has it ever owned 100%, or even a majority, of TUS. (*Id.* at ¶ 2.) Since TUS's founding, TT has owned only 50% of TUS. (*Id.*) Nor has TT ever owned 100% of CPT. (*Id.*) TT currently owns only approximately 30% of CPT. (*Id.*)[6] Furthermore, the composition of TUS's board of directors contradicts any alleged control by TT. TUS's six-member board consists of only two directors from TT, two from TUS's own management, and two who neither have ownership in TUS nor are officers or directors of TT or CPT. (*Id.* at ¶ 3.)

Finally, Plaintiffs' allegation that the Lin Family controls TUS is unavailing because the Lin Family does not control TT. (*See* Am. Compl. at ¶ 44). Members of T.S. Lin's family – the family that Plaintiffs suggest controls TUS – hold only 4.7 percent of TT's shares. (*See* Dkt. 869 (previously filed Request for Judicial Notice at p. 31). In addition, several investment funds hold significant shareholdings in TT. Furthermore, TT is a public company, listed on the Taiwan Stock Exchange, is owned by all of its shareholders and is governed by a duly-elected Board of Directors. Thus, the naked assertion that the family of T.S. Lin controls TT must be rejected. Finally, TT's Chairman has been CPT's Chairman only since March 30, 2007, well after the alleged Conspiracy Period. Therefore, since the T.S. Lin family is Plaintiffs' only link to TT's alleged control of TUS, Plaintiffs' control argument with respect to TUS must fail.

Plaintiffs' allegations, given the undisputed facts, fall far short of showing that TT controls TUS or did so during the Conspiracy Period. The undisputable facts regarding the ownership of TUS and the composition of its board demonstrate that Plaintiffs cannot satisfy the control exception. Because Plaintiffs have not, and cannot, satisfy the control exception to *Illinois Brick*, their Section 1 claim against TUS is barred.

### 4. The Rule Of *Illinois Brick* Operates As A Bar and Does Not Provide An Affirmative Theory Of Liability.

Furthermore, *Illinois Brick* does not provide an affirmative theory or basis of liability against TUS. First, the rule of *Illinois Brick* is a defense, barring claims based on purchases made by an

---

[6] Insofar as the facts regarding TT's partial share ownership in CPT and TUS are publicly available, this Court can take judicial notice of them.

indirect purchaser.  Second, any exception to *Illinois Brick*, including the control exception, applies only to allow certain purchasers to assert claims against alleged conspirator manufacturers based on purchases from an intermediary.  Rulings establishing the control exception do not authorize such purchasers to assert a claim directly against the intermediary unless it too is an alleged co-conspirator.  Because *Illinois Brick* does not provide the Plaintiffs here with an affirmative theory of liability against TUS, they must allege that TUS knew of and participated in the alleged conspiracy. As set forth below, the Plaintiffs have utterly failed to do that here.

**B.     THE COMPLAINT FAILS TO ALLEGE THAT TUS PARTICIPATED IN A CONSPIRACY UNDER SECTION 1 AND THEREFORE FAILS TO STATE A CLAIM AGAINST TUS UPON WHICH RELIEF CAN BE GRANTED.**

In addition to lacking standing as direct purchasers, Plaintiffs have failed to allege that TUS entered into any alleged anti-competitive agreement or that TUS participated in the alleged conspiracy in any way.  Nor have Plaintiffs plausibly alleged that TUS is controlled by another alleged member of the conspiracy so as to be liable for the alleged conduct of that other entity. Dismissal pursuant to Rule 12(b)(6) is therefore appropriate.

**1.     Plaintiffs Fail To Allege That TUS Participated In A Conspiracy.**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65, 1974 (finding that allegations of parallel conduct in action alleging violations of antitrust laws were insufficient to sustain complaint against motion to dismiss because complaint lacked "enough facts to state a claim to relief that is plausible on its face").  What is required at the pleading stage are "allegations plausibly suggesting (not merely consistent with) agreement." *Id.* at 1966.  Furthermore, although a claimant need not set out in detail the facts upon which the claim is based, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965 n.3.  In sum, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  Here, the facts

alleged against TUS fail to nudge Plaintiffs' claims against TUS from the merely speculative to the plausible; thus, dismissal is warranted. *See Twombly*, 127 S. Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citing Fed. R. Civ. P. 8(a)(2) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"); *Realnetworks, Inc. v. DVD Copy Control Ass'n*, No. C 08-4548 MHP, No. C 08-4719 MHP, 2010 U.S. Dist. LEXIS 1433, at *26 (N.D. Cal. Jan. 6, 2010) (dismissing complaint where plaintiff offered only "conclusory" allegations and "fail[ed] to allege any facts that would turn [a] legal conclusion into a plausible factual allegation").

To satisfy the pleading requirements of Rules 8(a) and 12 of the Federal Rules of Civil Procedure, Plaintiffs here must provide specific allegations regarding the conduct of TUS and the role TUS played in the alleged conspiracy. *See, e.g.*, *Twombly*, 127 S. Ct. at 1964-65, 1974 ("…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Stated differently, the complaint must allege the "who, did what, to whom (or with whom), where, and when." *See Kendall*, 518 F.3d at 1048 (holding that district court could reject on motion to dismiss conclusory allegations that two related entities conspired with other entities, when the allegations lacked "any evidentiary facts alleged to support such conclusion"); *see also William O. Gilley Enters. v. Atl. Richfield Co.,* 588 F.3d 659, 668 (9th Cir. 2009) (affirming the rule of *Kendall* and trial court's dismissal of claim where complaint failed to assert which individual agreement or agreements constituted in themselves a contract by which persons intended to restrain trade); *Brennan* v. *Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136-37 (N.D. Cal. 2005) (dismissing price-fixing claims against two defendants because "there are no allegations in the complaint specifically connecting [those defendants] to the alleged conspiracy").[7] Plaintiffs' allegations fall far short of

---

[7] Plaintiffs here have impermissibly lumped together allegations against multiple "Defendants" and have thus failed in their obligation to state facts that allege the role and conduct *each* named defendant played in the alleged. *See, e.g.*, *In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) ("A complaint that lumps together thirteen individual defendants, where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants."); *see also In re Travel Agent Com'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007) ("Because Plaintiffs failed to allege that [one of the defendants] engaged in parallel conduct, the claims against [that defendant] must also be dismissed."); *id*. at

14

Case No. 09-cv-4997 SI

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

this standard with respect to TUS.  Thus, even if Plaintiffs could establish their standing as direct purchasers, the Court should dismiss their Section 1 claim against TUS.

Plaintiffs have utterly failed to allege any separate and distinct conduct by TUS, much less that any officer, director, or employee of TUS entered into any illegal agreement with any other company at any time or place, the terms of any such agreement or that TUS engaged in conduct parallel with that of other companies.  Plaintiffs impermissibly assert general allegations as to all "Defendants" and lump TUS together with TT and with CPT and other Defendants named in the Amended Complaint. (Am. Compl. at ¶ 82.)  That TUS sold LCD Panels (or LCD Products) does not render TUS a knowing participant in the alleged conspiracy. (*Id.* at ¶ 118.)

The Complaint also fails to allege anything that TUS actually *did* in connection with the alleged conspiracy, or even any indirect role that it might have played.  Plaintiffs claim that TUS and CPT participated in the alleged conspiracy because "Tatung America sold and distributed LCD Products manufactured by Chunghwa Picture Tubes, Ltd. to customers throughout the United States" and because "Chunghwa and Tatung were closely affiliated." (*Id.* at ¶¶ 44, 45.)  Plaintiffs do not define "Tatung," and it therefore has not alleged that TUS is the alter ego of "Chunghwa" or CPT.  Nor does the generic claim that "[e]ach defendant that is a subsidiary of a foreign parent acted as the United States agent for LCD Panels and/or LCD Products made by its parent company," without offering any facts whatsoever in support of that allegation with respect to TUS or any other defendant (*id.* at ¶¶ 63, 66), provide grounds for ignoring corporate separateness.  Likewise, the allegation that TUS merely obtained LCD Products from "Chunghwa" and "sold and distributed" them "to customers" is, even combined with the other conclusory assertions, insufficient to plausibly

*3, fn. 4 (dismissing claims against defendant because that defendant is "mentioned by name only once in the Complaint" and is a holding company that did not make commission payments of the type challenged by plaintiffs and, thus, "there is no factual matter to plausibly suggest that [that defendant] joined or participated in an unlawful conspiracy"); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [the moving defendant]."); *Invamed, Inc. v. Barr Labs., Inc.* 22 F. Supp. 2d 210, 218, 221 (S.D.N.Y. 1998) ("The complaint fails to support the existence of a conspiracy as it presents no facts that might establish any participation by the [parent companies] in the alleged conspiracy, save including them in the term 'defendants.' …[Plaintiff] has not alleged that the [parent companies] 'acted' in any way.").

allege TUS's participation in any conspiracy.  *See Twombly*, 127 S. Ct. at 1966 (what is required at the pleading stage are "allegations plausibly suggesting (not merely consistent with) agreement.").

## 2.    Plaintiffs Fail To Allege Facts Establishing Control.

Nor can Plaintiffs satisfy their pleading obligations by relying on the conclusory and insufficient allegations that TT controlled TUS for the purposes of the alleged conspiracy or during the Conspiracy Period, if that is what they mean to suggest. (Am. Compl. at ¶ 44.)  It is fundamental that a party may not be held liable for the alleged misconduct of another corporation merely because that party is a subsidiary of that other corporation, for "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries," and vice-versa. *Bestfoods*, 524 U.S. at 61.[8]

Furthermore, although Plaintiffs' broad-brush approach includes defining "Chunghwa" to include TUS, a fair reading of the Complaint makes clear that the allegations against "Chunghwa" do not plausibly allege wrongdoing by TUS.  Plaintiffs allege that "officials from" Chunghwa met "periodically in Taiwan" with "officials from" other defendants (Am. Compl. at ¶ 87) and that "Chunghwa" and other defendants "attended multiple CEO, Commercial, and working-level meetings, as well as bilateral discussions, during the Conspiracy Period … " (*id.* at ¶ 98).  Tellingly, Plaintiffs do *not* allege that any TUS (or TT) officer, director, executive, or other employee attended any meeting whatsoever, let alone name such an individual or individuals. To invoke a cloud of wrongdoing with respect to all of three entities Plaintiffs choose to lump in as "Chunghwa,"

___

[8] *See also Miller v. IBM*, No. C02-2118, 2006 WL 2792416 at *10 (N.D. Cal. Sept. 26, 2006) (holding IBM, parent company of IBM China, and IBM Engineering Technology Co., Ltd., not responsible for the actions of its subsidiaries); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) ("[a]ny relationship of parent and subsidiary" between defendant and other defendants alleged to have violated antitrust laws "is not enough" to state a claim against parent corporation); *Spears v. Transcontinental Bus. Sys., Inc.*, 226 F.2d 94, 98 (9th Cir. 1955) (finding shareholder not responsible for civil rights violations of its subsidiary because "a corporation and its stockholders are deemed separate legal entities and stock ownership in itself is not sufficient to charge the parent company with responsibility for acts of the subsidiary.") (citation omitted); *Invamed*, 22 F. Supp. 2d at 219 ("Absent allegations of anticompetitive conduct by the [parent companies] 'there is no basis for holding [them] liable for the alleged antitrust violations of their subsidiary'") (quoting *Gemco Latinoamerica, Inc.* v. *Seiko Time Corp.* 685 F. Supp. 400, 403 (S.D.N.Y. 1988)); *see also Wady* v. *Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1068 (C.D. Cal. 2002) (refusing to "pierc[e] the corporate veil on an alter ego theory in order to hold a parent corporation liable for the acts or omissions of its subsidiary").

16

Case No. 09-cv-4997 SI

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs claim that "Chunghwa" "admitted and pleaded guilty to participating in the conspiracy … to fix the price of LCD Panels sold worldwide including the United States and California … ." (*Id.* at ¶¶ 104, 105.)  By contrast, Plaintiffs do not allege that TUS ever "admitted or pleaded guilty" to any antitrust conspiracy regarding the price-fixing of "LCD Panels," which TUS does not manufacture. Nor do Plaintiffs allege that any of TUS's officers or directors pled guilty or were indicted for any wrongdoing.  In fact, neither TUS nor any of its officers or employees have pled guilty.  Plaintiffs have not even attempted to show any connection between TUS and guilty pleas or indictments. Thus, Plaintiffs do not allege that TUS participated in the wrongdoing described.  Finally, the corporate separateness of TUS does not dissolve at Plaintiffs' whim by defining "Chunghwa" to include TUS (*see id.* at ¶ 44), much less by including TUS within the broad sweep of Plaintiffs' generic claims against "Defendants" (*see, e.g., id.* at ¶ 4).

In short, Plaintiffs have completely failed to allege any specific facts as to TUS, including that TUS committed any wrongdoing, had any knowledge of the alleged conspiracy, or participated in that conspiracy in any way.  Nor have Plaintiffs plausibly made out an alter-ego theory whereby the conduct of TT or any other corporate entity alleged to be related to TUS could be attributed to TUS or vice versa, as the Complaint is utterly devoid of any allegations that would justify the disregard of TUS's corporate form.  Finally, based on the facts set forth earlier in this brief, the undisputed facts demonstrate that Plaintiffs cannot demonstrate TT's or CPT's control over TUS

Because the Complaint lacks allegations of wrongdoing by TUS in its own right or of an alter-ego theory, Plaintiffs have failed to make out a Section 1 claim against TUS.

## C.   THE CARTWRIGHT ACT CLAIM SHOULD BE DISMISSED FOR FAILURE TO MEET THE *TWOMBLY* PLEADING STANDARD.

Plaintiffs' second claim for relief, brought under California's state antitrust statute known as the Cartwright Act (Cal. Bus. & Prof. Code § 16720, *et seq.*), must also be dismissed pursuant to Rule 12(b)(6). The claim is subject to the same pleading standard as set forth above for federal claims in *Twombly*, 127 S. Ct. at 1965.  "Federal pleading standards govern in federal court, even as to state claims. … Since plaintiffs' federal and state-law antitrust claims are predicated on the same

allegations of conspiracy, they likewise are insufficient to state a claim for conspiracy." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007).[9]  Indeed, the Cartwright Act is interpreted in accordance with federal law. *Marin County Bd. of Realtors, Inc. v. Eugene Pallsson*, 549 P.2d 833, 835 (Cal. 1976); *see also In re Late Fee & Over-Limit Litig.*, 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007) (dismissing Cartwright Act claim on ground that "analysis under California's antitrust law mirrors the analysis under federal law").

Plaintiffs' allegations under the Cartwright Act are a repeat of those under the Sherman Act claim, which fail to meet the *Twombly* standard.  Indeed, Plaintiffs in their Cartwright Act claim "incorporate and reallege … each and every allegation set forth" in the federal antitrust claim … ." (Am. Compl. at ¶ 180.)  Moreover, the complained-of conspiracy and alleged effects on Plaintiffs are identical between the Sherman Act and Cartwright Act claims, except that the Sherman Act claim alleges effects in "the United States" and the Cartwright Act claim effects "in the State of California." (*Id.* at ¶¶ 176-77, 186-87.)  To support the Cartwright Act claim, Plaintiffs add no facts to those scanty allegations in the preceding claim for relief under the Sherman Act, other than that "Defendants LG Display, Chunghwa, and Sharp all admitted in their plea agreements" that certain acts were conducted in California.  (*Id.* at ¶ 182)  Because the factual allegations were insufficient to make out a Section 1 claim against TUS, those same allegations, by law, cannot support their Cartwright Act claim. Thus, Plaintiffs' second claim for relief should be dismissed.

**D.    PLAINTIFFS' "ALTERNATIVE" CLAIMS UNDER THE LAWS OF VARIOUS STATES FAIL BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION AND/OR BECAUSE PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.**

The laws of various jurisdictions invoked by Plaintiffs likewise afford no relief. Plaintiffs ask this Court to consider the laws of various states, the District of Columbia, and Puerto Rico "in the

---

[9] S*ee also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1953 (2009) (holding that the pleading standard set forth in *Twombly* applies "in all civil actions and proceedings in the United States district courts"); *Wright v. General Mills, Inc.*, 2009 U.S. Dist. LEXIS 90576, *13-18 (S.D. Cal. Sept. 30, 2009) (dismissing, based on *Twombly* and pursuant to Rule 12(b)(6), claims inadequately pleaded under the California UCL) *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1013 (D. Minn. 2008) (dismissing state-law claim for failure to meet *Twombly* pleading standard); *Lee v. Dublin Manor Corp.*, 2007 U.S. Dist. LEXIS 56703 (S.D. Ohio Aug. 3, 2007) (same).

alternative" in the event the Court dismisses the Sherman Act and the Cartwright Act claims. The state claims, like the federal claims, are subject to the federal pleading standard under *Twombly*. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. at 1949, 1953 (noting that the *Twombly* standard applies "in all civil actions and proceedings in the United States district courts"). Plaintiffs fail to meet that standard with respect to any of the claims in their third claim for relief.

Furthermore, certain state law claims fail to plead the requisite elements. The allegations under the laws of each of these jurisdictions are identical and are nonspecific with respect to TUS (or any other defendant). Plaintiffs allege only that "Defendants' conspiracy restrained, suppressed, and/or eliminated competition in the sale of LCD Panels" and "substantially affected" the commerce of each state, that Plaintiffs "conducted a substantial volume of business in" each state, and that "injury in [Plaintiffs'] business and property" resulted from "paying more for LCD Products purchased from Defendants, their coconspirators, and others" than they would have paid absent the "conspiracy." (*Id.* at ¶¶ 191; 193-213). Additionally, Plaintiffs allege that "Defendants" violated the California UCL. (*Id.* at ¶ 192). For the reasons stated below, these claims should be dismissed.

### 1.   Plaintiffs' Claim Under California Unfair Competition Law Fails.

To state a claim under California's UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, a plaintiff must allege conduct that is "unlawful," "unfair," or "fraudulent" that caused injury to the plaintiff and that the plaintiff has standing to bring suit. *Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 837 (2006). Plaintiffs cannot meet these requirements. (*See* Am. Compl. at ¶ 192.) Thus, their UCL claim should be dismissed.

### a.   Plaintiffs Lack Standing To Bring A UCL Claim Against TUS.

A private plaintiff's standing to bring a claim under the UCL mandates a showing of injury in fact and loss of money or property as a result of unfair competition. *Buckland v. Threshold Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 553, 558 (Cal. App. 2007) (dismissing UCL claim for lack of standing); *Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466, 469-70 (Cal. App. 2008) (same). Claims based on the "unlawful" or the "unfair" prong of the UCL require a showing that the alleged wrongdoing proximately caused the injury, that is, that the conduct "'is the first and direct power producing the

[injury].'" *Lorenzo v. Qualcomm, Inc.*, 2009 U.S. Dist. LEXIS 69843, *17-18 (S.D. Cal. Aug. 10, 2009) (citing *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007); quoting *Oakland Bank of Sav. v. Murfey*, 68 Cal. 455, 462 (1986)). Where there are multiple "intermediaries" between the conduct and the injury, the injury is attenuated and the UCL offers no remedy. *Lorenzo*, 2009 U.S. Dist. LEXIS 69843, at *19-20. For claims based on the "fraudulent" prong, the plaintiff must allege actual reliance. *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1257 (Cal. App. 2009) (citations omitted).

Here, Plaintiffs do not allege any facts to support a finding that, even if Plaintiffs did pay more for its LCD Panels or LCD Products than for comparable products, the injury could be traced to TUS's conduct. *See Lorenzo*, 2009 U.S. Dist. LEXIS 69843, at *19. Plaintiffs do not allege having purchased anything directly from TUS, nor actual reliance on TUS's representations. As alleged, the relationship between the purported injury and TUS's conduct is remote, attenuated, and consequential. *See id.* at *20-21. Plaintiffs thus fail to state a claim under the UCL.

### b.    Plaintiffs Have Failed To Allege Conduct That Violates The UCL.

The UCL claim should be dismissed as duplicative and derivative of Plaintiffs' antitrust claims under the Sherman and Cartwright Acts.[10] "If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason … the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.  To permit a separate inquiry into essentially the same question under the [UCL] would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct." *Chavez*, 113 Cal. Rptr. 2d at 184.

Plaintiffs' allegations in support of their UCL claim are insufficient because they simply re-state the allegations in support of their Sherman Act and Cartwright Act claims and incorporate those same claims.[11] Plaintiffs assert, but allege nothing to support, that "Defendants'" acts are

---

[10] *See, e.g.*, *Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 183-84 (Cal. App. 2001) (dismissing derivative UCL claim where allegations failed to state a Cartwright Act claim); *In re Late Fee*, 528 F. Supp. 2d at 965 (dismissing UCL claim that was "explicitly premised on the assertion that the fees violate federal law and … no [federal] claim [was] stated"); *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (same); *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 645-46 (Cal. App. 2007) (same).

[11] Specifically, Plaintiffs allege that *"[b]y reason of the foregoing,* defendants have engaged in unfair

20

Case No. 09-cv-4997 SI

TATUNG COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

"unfair, unconscionable, unlawful, and/or fraudulent independently of whether they constitute a violation of the Sherman Act and/or the Cartwright Act." (Am. Compl. at ¶ 192.) Because Plaintiffs fail to state a claim for a violation of the Sherman Act or Cartwright Act, and because Plaintiffs allege no further facts here in support of their UCL claim against TUS, the UCL claim must fail.

### 2. Plaintiffs' Claim Under Hawaii Law Fails To The Extent It Is Based On Purchases Made Before June 25, 2002.

The Court should dismiss the claim under Haw. Rev. Stat. Ann. §§ 480-1 *et seq.* to the extent the claim is based on purchases made before June 25, 2002. (*See* Am. Compl. at . ¶ 194.) By statute enacted on that date, indirect purchasers were permitted to bring antitrust claims, notwithstanding the U.S. Supreme Court's decision in *Illinois Brick*. Haw. Rev. Stat. § 480-2(e). Before 2002, Hawaiian law did not permit private plaintiffs to bring antitrust lawsuits based on claims of unfair methods of competition. *See Robert's Haw. School. Bus. Inc. v. Laupahoehoe Transp. Co. Inc.*, 982 P.2d 853, 880-81 (Haw. 1999). In Hawaii, "[i]t is an established rule that 'no law has any retrospective operation, unless otherwise expressed or obviously intended.'" *Clark v. Cassidy*, 636 P.2d 1344, 1346 (Haw. 1981); *see also* Haw. Rev. Stat. § 1-3. Here, Hawaii's highest court has confirmed that the revised law cannot be applied retroactively. *Hawaii Med. Ass'n v. Hawaii Med. Svc.*, 148 P.3d 1179, 1209 (Haw. 2006) (affirming dismissal of plaintiffs' unfair competition claim insofar as it is based on alleged wrongful acts committed before June 25, 2002). Thus, Plaintiffs' claim under Hawaii law fails to the extent it is based on purchases predating June 25, 2002.

### 3. Plaintiffs' Claim Under Illinois Law Fails.

Plaintiffs' claim against TUS under the Illinois Antitrust Act, 740 ILCS 10/1 *et seq.*, likewise fails because Plaintiffs neither meet the requisite pleading standard nor allege that they suffered a direct injury. (*See* Am. Compl. at ¶ 195.) The claim is subject to the pleading standard set forth in *Twombly*, 127 S. Ct. at 1965. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1950; *In re Graphics Processing*

---

competition in violation of [the UCL]" and "committed acts of unfair competition, as defined by Section 17200, *et seq.*, by engaging in a conspiracy to fix and stabilize the price of LCD Panels *as described above*"; and "that the acts constitute a common, continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of Section 17200, et seq., including, but not limited to (1) *violation of Section 1 of the Sherman Act*; (2) *violation of the Cartwright Act*." (Am. Compl. at ¶ 192 (emphasis added).)

*Units Antitrust Litig.,* 527 F. Supp. 2d at 1025. The allegations are insufficient to meet this standard.

Despite Illinois' repeal of *Illinois Brick*, "in other respects Illinois antitrust law uses the federal approach." *Int'l Bhd. of Teamsters, Local 734 v. Philip Morris*, 196 F.3d 818, 828 (7th Cir. Ill. 1999). "The Illinois Antitrust Act is modeled on the Sherman Act, and Illinois courts interpret the state antitrust act in accordance with federal law." *Gutnayer v. Cendant Corp.*, 116 Fed. Appx. 758, 761 (7th Cir. 2004) (citing 740 ILCS 10/11; *Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, (1990)). The Court must follow federal law in interpreting 740 Ill. Comp. Stat. 10/3, the provision allegedly violated. (Am. Compl. at ¶ 11); *DSM Desotech Inc. v. 3D Sys. Corp.*, 2009 U.S. Dist. LEXIS 5980, *35-36 (N.D. Ill. Jan. 26, 2009) (citing *A & A Disposal & Recycling, Inc. v. Browning-Ferris Indus. of Ill., Inc.*, 279 Ill. App. 3d 337 (2d Dist. 1996)). Here, having failed to make out a claim under the Sherman Act, Plaintiffs likewise fail to make out a claim under 740 Ill. Comp. Stat. 10/3.[12] Furthermore, Plaintiffs lack standing because they cannot show a direct injury. Federal antitrust standing rules apply under the Illinois Antitrust Act.[13]

Furthermore, Illinois courts follow the standing test of *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").[14] To the extent that the allegedly price-fixed product is limited to LCD Panels, the alleged injury is too remote to be cognizable. Plaintiffs allege that Defendants' "conspiracy to fix the prices of LCD Panels" resulted

---

[12] *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 996 (N.D. Ill. 2003) (citations omitted) (dismissing Illinois Antitrust Act claim where plaintiff failed to make out Sherman Act claim); *see also Hackman v. Dickerson Realtors, Inc.*, 595 F. Supp. 2d 875, 880-81 (N.D. Ill. 2009) (rejecting claim under 740 ILCS § 10/3(3) where plaintiff failed to make out a claim under section 2 of the Sherman Act); *see also Baker v. Jewel Food Stores, Inc.*, 355 Ill. App. 3d 62, 69 (Ill. App. 2005).

[13] *O'Regan v. Arbitration Forums*, 121 F.3d 1060, 1065 (7th Cir. 1997) (citing *Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1479-80 (7th Cir. 1991)) (dismissing state antitrust claims for lack of standing). A plaintiff's standing depends on a showing of a direct relation between the injury asserted and the conduct alleged. *Holzrichter v. County of Cook*, 231 Ill. App. 3d 256, 266 (Ill. App. 1992); *County of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d 55, 60 (Ill. App. 2004).

[14] *County of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d at 62-65 (quoting *AGC*, 459 U.S. at 540-41) (dismissing antitrust claim brought by attorney general under the remoteness-of-injury test where plaintiffs were "not purchasers" of the products at issue and noting "there is a distinction between the 'direct-purchasers' doctrine and 'direct-injury' doctrine [under *AGC*]." ). Courts look to the chain of causation in determining whether "directness" between the injury and the alleged restraint can be shown. *AGC*, 459 U.S. at 540; *see also In re Potash Antitrust Litig.*, 2009 U.S. Dist. LEXIS 102623, 90 (N.D. Ill. Nov. 3, 2009) (dismissing potash product purchasers' claim against potash manufacturers because of the "absence of a critical link in the chain of causation alleged by Indirect Purchaser Plaintiffs"); *American Ad Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1058 (9th Cir. 1999) (noting that courts must look to "the chain of causation between [plaintiffs'] injury and the alleged restraint in the [alleged] market").

Case No. 09-cv-4997 SI

in "artificially inflated" price of "handsets containing LCD Panels" as well as "LCD Panels incorporated into LCD Products" allegedly purchased. (Am. Compl. at ¶ 5.) Such an injury is indirect and gives rise to a speculative harm and a risk of recovery duplicative of that sought by other claimants. *See AGC*, 459 U.S. at 535. Plaintiffs fail to allege a chain of causation between the restraint (illicit agreement to fix the price of LCD Panels) and alleged injury (higher prices paid for handsets). For example, Plaintiffs here do not attempt to distinguish any enhanced price of LCD Panels from other factors that may have affected the pricing of mobile wireless handsets in the chain of manufacturing and distribution. They likewise fail to define the market for LCD Products, particularly the market for mobile wireless handsets and its connection with the LCD Panel market, alleging only that LCD Panels are "incorporated into" those handsets. (Am. Compl. at ¶ 5.)

Additionally, Plaintiffs have failed to allege a direct injury with respect to TUS. Plaintiffs do not allege having purchased LCD Panels or LCD Products from TUS or even CPT (TUS's alleged single entity/alter-ego (*id.* at ¶ 45)). TUS does not distribute LCD Panels that could be incorporated into LCD Products, nor any mobile handsets incorporating LCD Panels or other mobile handsets displays. Furthermore, Plaintiffs fail to allege whether the entities from whom they purchased LCD Products passed on any overcharges paid from parties further up the supply chain resulting from the alleged price-fixing. *See In re Potash Antitrust Litig.*, 2009 U.S. Dist. LEXIS 102623, *89 (N.D. Ill. Nov. 3, 2009) (finding plaintiffs lacked standing because they could not establish the alleged "chain of causation" between the alleged harm suffered and defendants' wrongful acts, having failed to make any allegations about upstream sellers of products containing potash). For example, here, Plaintiffs purchased mobile wireless handsets from Motorola, which has filed a similar complaint against Defendants for damages pertaining to the mobile wireless handsets they purchased. (Dkt. # 1504). Thus, there is an obvious risk of duplicative recoveries, which should be avoided given that there are less-remote potential plaintiffs. *See AGC*, 459 U.S. at 542; *In re Potash,* 2009 U.S. Dist. LEXIS 102623, at *90. Thus, the Illinois Antitrust Act claim against TUS should be dismissed.

### 4.    Plaintiffs' Claim Under Iowa Law Fails.

Plaintiffs fail to make out a claim under Iowa Code Ann. §§ 553.1 *et seq.* (*See* Am. Compl. at

¶ 196.) Iowa's highest court has adopted the *AGC* test for standing. *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198 (Iowa 2007) ("Considering the *AGC* factors … plaintiffs' injuries were too remote to be compensable under Iowa's competition law."). The court in *Southard* refused to recognize the standing of direct or indirect purchasers who had not purchased the products that were the subject of the alleged restraint. *Id.* Only "'participants in the relevant market'" can recover; Iowa law affords no recompense where the "injuries alleged by the plaintiffs are not even indirect, as the plaintiffs are not in the chain of distribution." *Id.* at 199. Thus, as in Illinois, an antitrust plaintiff must show a direct link between the alleged anticompetitive conduct and the alleged injury suffered. *Id.* at 198. Plaintiffs' claim under Iowa law fails for the same reasons Plaintiffs cannot make out a claim under the Illinois Antitrust Act and should likewise be dismissed pursuant to Rule 12(b)(6).

### 5.    Plaintiffs' Claim Under Nebraska Law Fails.

Plaintiffs fail to state a claim against under Neb. Rev. Stat. §§ 59-801 *et seq.* (*See* Am. Compl. at ¶ 202.) As this Court has recognized, the test for standing under *AGC* applies under Nebraska law. *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 1109, 1122-24 (N.D. Cal. 2008) (citing *Kanne v. Visa U.S.A., Inc.*, 272 Neb. 489, 501-02 (2006)). Plaintiffs' claim under the Nebraska statute thus fails for the same reasons Plaintiffs cannot make out a claim under the Illinois Antitrust Act and should likewise be dismissed pursuant to Rule 12(b)(6).

Should the Court find that, under the *AGC* test, Plaintiffs have standing to pursue the claim against TUS, the claim should still be dismissed to the extent it is based on purchases made before July 19, 2002, the effective date of Nebraska's repeal of *Illinois Brick*. *Arthur v. Microsoft Corp.*, 267 Neb. 586, 603 (Neb. 2004) (Stephan, J., dissenting) (noting majority's failure to recognize that the repeal of *Illinois Brick* was not in effect at the time the action was commenced).

### 6.    Plaintiffs' Claim Under Puerto Rico Law Fails.

Plaintiffs fail to state a claim against under 10 L.P.R.A. §§ 257, *et seq.* with respect to any Defendant, as already set forth in the Joint Motion. (*See* Am. Compl. at ¶ 208.) As this Court has already determined, indirect purchasers lack standing to bring claims under the Puerto Rico antitrust law. *In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1187 (N.D. Cal. 2009) Because Plaintiffs

have not specifically alleged having purchased any LCD Panels or LCD Products from TUS, and because they did not do so, their claim against TUS must be dismissed.

Furthermore, even if it could be shown that Plaintiffs here were "direct purchasers" with respect to TUS (or any Defendant), a claim under Puerto Rico law would be time-barred. Puerto Rico does not recognize "fraudulent concealment," as alleged by Plaintiffs (*see* Am. Compl. at ¶¶ 163-72), such that any claim for injury resulting from activity during the alleged Conspiracy Period would be limited to the applicable statute of limitations ("four (4) years after the cause of action accrued"). *See In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d at 1132 n.12; 10 L.P.R.A. § 268(c).

## V.   CONCLUSION

For the reasons stated above, Plaintiffs' Section 1 claim against TUS should be dismissed because this Court lacks subject matter jurisdiction over the claim with respect to TUS and because the Amended Complaint fails to state a claim against TUS upon which relief can be granted. Plaintiffs' Cartwright Act claim with respect to TUS should likewise be dismissed for failure to state a claim upon which relief can be granted. Finally, Plaintiffs' claims under antitrust and unfair-competition laws of various jurisdictions should be dismissed because this Court lacks subject matter jurisdiction over the claim with respect to TUS and because the Amended Complaint fails to state a claim against TUS upon which relief can be granted.

1

2                                                    BAKER & McKENZIE LLP

3    Dated:  February 19, 2010

4                                            By:    /s/ Patrick J. Ahern
                                                    Patrick J. Ahern
5                                                   Attorneys for Defendant
                                                    TATUNG COMPANY OF AMERICA
6

7    Bruce H. Jackson (State Bar No. 98118)
       (bruce.h.jackson@bakernet.com)
     Robert W. Tarun (State Bar No. 64881)
8      (robert.w.tarun@bakernet.com)
     **BAKER & McKENZIE LLP**
9    Two Embarcadero Center, 11th Floor
     San Francisco, CA  94111-3802
10   Telephone:  +1 415 576 3000
     Facsimile:  +1 415 576 3099
11
     Of Counsel:
12
     Patrick J. Ahern
13     (patrick.j.ahern@bakernet.com)
     Roxane C. Busey
14     (roxane.c.busey@bakernet.com)
     Karen Sewell
15     (karen.sewell@bakernet.com)
     **BAKER & McKENZIE LLP**
16   One Prudential Plaza
     130 East Randolph Drive
17   Chicago, IL  60601
     Telephone:  +1 312 861 8000
18   Facsimile:  +1 312 861 2899

19   Attorneys for Defendant
     TATUNG COMPANY OF AMERICA
20

21

22

23

24

25

26

27

28

1

2
**CERTIFICATE OF SERVICE**

3
        The undersigned counsel hereby certifies that a true and correct copy of the foregoing
4
document was served upon the parties and counsel of record, through the Court's ECF system, on
February 1, 2010.

5

6
                                                            /s/ Patrick J. Ahern
7                                                      Patrick J. Ahern
                                                       One of the Attorneys for Defendant
8                                                      Tatung Company of America

9

10

11

12

13

14
CHIDMS1/2761086.7
15

16

17

18

19

20

21

22

23

24

25

26

27

28