1 | Jason C. Murray, Esq. (State Bar No. 169806)
CROWELL & MORING LLP
2 | 515 South Flower Street, 40th Floor
Los Angeles, CA 90071
3 | Telephone:     (213) 622-4750
Facsimile:     (213) 622-2690
4 | Email:   jmurray@crowell.com

5 | Jeffrey H. Howard (pro hac vice)
Jerome A. Murphy (pro hac vice)
6 | CROWELL & MORING LLP
1001 Pennsylvania Ave. N.W.
7 | Washington, D.C.  20004
Telephone:     (202) 624-2500
8 | Facsimile:     (202) 628-5116
Email:   jhoward@crowell.com
9 |            jmurphy@crowell.com

*Counsel for Plaintiffs AT&T Mobility LLC,
AT&T Corporation, AT&T Services, Inc.,
Bellsouth Telecommunications, Inc., Pacific Bell
Telephone Company, AT&T Operations, Inc.,
AT&T Datacomm, Inc., Southwestern Bell
Telephone Company, and Motorola, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. M 07-1827 SI<br>MDL No. 1827 |
| THIS DOCUMENT RELATES TO:<br><br>*AT&T Mobility LLC, et al. v. AU Optronics Corporation, et al.*, C 3:09-04997 SI<br><br>*Motorola, Inc. v. AU Optronics Corporation, et al.*, C 3:09-05840 SI | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT TATUNG COMPANY OF AMERICA, INC.'S MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>Date:      June 4, 2010<br>Time:     9:00 a.m.<br>Crtrm.:   10<br>Judge:   Honorable Susan Illston |

Case Nos. M-07-1827-SI/C-09-4997-SI/C-09-5840-SI

**PLAINTIFFS' BRIEF IN OPPOSITION TO TATUNG'S MOTIONS TO DISMISS
PLAINTIFFS' AMENDED COMPLAINTS FOR DAMAGES AND INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

    A. This Court Has Already Rejected TUS's Arguments. ............................................ 1

    B. The Same Allegations Are Made Against TUS Here. ........................................... 2

III. ARGUMENT ....................................................................................................................... 5

    A. TUS Does Not Qualify As A Direct Purchaser Under the Sherman Act................ 5

    B. Plaintiffs Have Alleged Legally Sufficient Claims Against TUS Under The Sherman Act............................................................................................................ 7

    C. Plaintiffs Have Asserted Valid Claims Against TUS Under Various State Antitrust Laws........................................................................................................ 8

        1. Plaintiffs Have Alleged Legally Sufficient Claims Against TUS Under Applicable State Antitrust Laws. ..................................................... 9

        2. Plaintiffs Have Standing To Bring Their State-Law Antitrust Claims........ 9

        3. Plaintiffs Have Asserted Valid Claims Under California's Unfair Competition Law. ...................................................................................... 12

        4. Plaintiffs State Valid Claims Under Hawaii Law Prior to June 25, 2002. ........................................................................................... 14

        5. Nebraska's *Illinois Brick* Repealer Statute Applies Retroactively. .......... 15

IV. CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
    190 F.3d 1051 (9th Cir. 1999) ..................................................................................................10

*Arthur v. Microsoft Corp.*,
    267 Neb. 586 (Neb. 2004)..........................................................................................................15

*Associated General Contractors of California v. California State Council of Carpenters*,
    459 U.S. 519 (1983).........................................................................................................9, 10, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................7, 8, 9

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
    620 F.2d 1360 (9th Cir. 1980) .....................................................................................................7

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989).......................................................................................................................7

*Chavez v. Whirlpool Corp.*,
    113 Cal. Rptr. 2d 175 (Cal. Ct. App. 2002) ..............................................................................14

*County of Cook v. Philip Morris, Inc.*,
    353 Ill. App. 3d 55 (Ill. App. 2004) .............................................................................................9

*Freeman v. San Diego Ass'n of Realtors*,
    322 F.3d 1133 (9th Cir. 2003) ...........................................................................................2, 5, 6

*Hawaii Med. Ass'n v. Hawaii Med. Svc. Ass'n*,
    148 P.3d 1179 (Haw. 2006) .......................................................................................................15

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)........................................................................................................5, 7, 15

*In re Cement and Concrete Antitrust Litig.*,
    817 F.2d 1435 (9th Cir. 1987) .....................................................................................................7

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ....................................................................................12

*In re Graphics Process Units Antitrust Litig.*,
    540 F. Supp. 2d 1085 (N.D. Cal. 2007) ....................................................................................12

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007)..........................................................................................12

*In re Late Fees & Over-Limit Fees Litig.*,
    28 F. Supp. 2d 953 (N.D. Cal. 2007) ........................................................................................14

*In re Tobacco II Cases*,
　　207 P.3d 20 (Cal. 2009) ..........................................................................................................13

*Laub v. U.S. Dep't of Interior*,
　　342 F.3d 1080 (9th Cir. 2003) .................................................................................................7

*Lauter v. Anoufrieva*,
　　642 F. Supp. 2d 1060 (C.D. Cal. 2009) .............................................................................12, 14

*Miletak v. Allstate Ins. Co.*,
　　Case No. 06-cv-03778 JW, 2009 WL 137142, (N.D. Cal. 2009) ..................................13

*Royal Printing Co. v. Kimberly-Clark Corp.*,
　　621 F.2d 323 (9th Cir. 1980) ......................................................................................2, 5, 6, 7

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
　　Case No. 08-cv-529 JVS, -- F. Supp. 2d --, 2010 WL 1192438 (C.D. Cal. Mar. 16,
　　2010) ......................................................................................................................................14

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*,
　　668 F.2d 1014 (9th Cir. 1981) .................................................................................................6

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................................................12

Haw. Rev. Stat. Ann. §§ 480-1 *et seq.* .....................................................................................14, 15

Neb. Rev. Stat. §§ 59-801 *et seq.* ..................................................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(6).....................................................................................................................7

Fed. R. Civ. P. 8(a) ...........................................................................................................................7

I.  **INTRODUCTION**

For the third time in this multidistrict litigation, Tatung Company of America, Inc. ("TUS") has recycled the same arguments: (1) that this Court lacks subject matter jurisdiction to hear the claims asserted against it, and (2) that plaintiffs have failed to allege a legally sufficient antitrust claim. On both previous occasions, this Court flatly rejected TUS's arguments and upheld the plaintiffs' claims. For the same reasons that TUS's arguments failed in the past, they also fail in connection with the claims brought by Plaintiffs Motorola, Inc. ("Motorola") and AT&T Mobility LLC, AT&T Corporation, AT&T Services, Inc., Bellsouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., and Southwestern Bell Telephone Company (collectively "AT&T," and together with Motorola, the "Plaintiffs").[1] In addition, as explained below, TUS's arguments for dismissal of Plaintiffs' state-law antitrust claims are unavailing.

II.  **STATEMENT OF FACTS**

A.  **This Court Has Already Rejected TUS's Arguments.**

On March 3, 2009, this Court denied TUS's motion to dismiss the direct purchaser class plaintiffs' amended complaint based on the same arguments asserted here. *See* March 3, 2009 Order Denying Tatung Co. of Am.'s Mot. to Dismiss (MDL Docket No. 873) ("TUS MTD Order"). In doing so, the Court not only rejected TUS's contention that "the [class] complaint [did] not adequately allege its role in the alleged conspiracy," but also affirmatively concluded that the complaint "sufficiently allege[d] a basis for TUS's liability" in connection with its relationship with Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa"), and their shared corporate parent, Tatung Company of Taiwan ("Tatung Taiwan"). *Id.* at 2-3. The Court also noted that "TUS ha[d] not shown that it is not a proper defendant." *Id.* (applying *Royal Printing*

---

[1] TUS has filed separate motions to dismiss in the Motorola and AT&T cases; however, because the two motions raise identical arguments, Plaintiffs have filed a joint brief in response. *See* Def. Tatung Co. of Am., Inc.'s Notice of Mot. & Mot. to Dismiss Plaintiff's Amended Compl. (AT&T Docket No. 36; Motorola Docket No. 27).

**PLAINTIFFS' BRIEF IN OPPOSITION TO TATUNG'S MOTIONS TO DISMISS
PLAINTIFFS' AMENDED COMPLAINTS FOR DAMAGES AND INJUNCTIVE RELIEF**

*Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980), and *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145-45 (9th Cir. 2003)).

Subsequently, on March 28, 2010, this Court denied TUS's motion for reconsideration of its earlier order. *See* March 28, 2010 Order Denying Tatung Co. of Am.'s Mot. for Leave to File a Mot. for Recons. (MDL Docket No. 1643) ("TUS Reconsideration Order"). In doing so, the Court reaffirmed its earlier conclusions that the direct purchaser class plaintiffs sufficiently alleged that TUS "was an 'active, knowing participant[ ] of the alleged conspiracy'" and that "TUS has not shown that it is not a proper defendant." *Id.* at 2. Pointing to allegations that TUS "(1) is a subsidiary of Tatung Taiwan; (2) is controlled by Tatung Taiwan; (3) serves as the U.S. distributor for TFT-LCD products made by Chunghwa (another subsidiary of Tatung Taiwan); and (4) is unlikely to sue Tatung Taiwan for Sherman Act violations," the Court also explained that nothing on the record indicates that Chunghwa and TUS "are not part of a vertically-integrated *corporate group* for Sherman Act purposes." *See id.*

### B. The Same Allegations Are Made Against TUS Here.

The same allegations that led this Court to reject TUS's arguments in earlier motions are pled in Plaintiffs' amended complaints. First, Plaintiffs allege that all defendants engaged in an overarching conspiracy to fix prices of LCD panels:

- Defendants engaged in a long-running conspiracy to fix, raise, and/or stabilize the prices of LCD panels that restricted competition and impacted billions of dollars worth of commerce in the United States. AT&T Amended Compl. (MDL Docket No. 1504) ("TAC") ¶¶ 1-4, 30-172; Motorola Amended Compl. (MDL Docket No. 1503) ("MAC") ¶¶ 1-4, 28-160.

- In furtherance of the conspiracy, employees at all levels of defendants – including CEOs – engaged in group meetings, known as "crystal" meetings, as well as bilateral discussions, where they agreed to exchange competitive information, fix prices of LCD panels, and limit LCD panel production. TAC ¶¶ 87-118; MAC ¶¶ 85-116.

- To date, six defendants named in these cases have pled guilty to participating in the conspiracy. TAC ¶ 3; MAC ¶ 4.

Second, Plaintiffs allege that Chunghwa – TUS's corporate affiliate and the company to which TUS acts as a sales agent – participated in the conspiracy to fix prices of LCD panels:

- Chunghwa and three of its current and former executives pled guilty to and paid criminal fines in connection with their involvement in the conspiracy. TAC ¶¶ 3-4, 104-06, 147; MAC ¶¶ 4, 10, 102-04, 146.
- A number of former Chunghwa executives have been indicted for their participation in the conspiracy. TAC ¶¶ 106, 147; MAC ¶¶ 104, 146.
- Chunghwa participated in the conspiracy by attending "crystal" meetings and engaging in bilateral discussions with competitors. TAC ¶¶ 87-99, 104, 114; MAC ¶¶ 85-96, 102, 112.
- Chunghwa reaped the benefits of its participation in the conspiracy, posting unprecedented price increases and revenues shortly after the conspiracy's inception. TAC ¶¶ 132-33; MAC ¶¶ 130-31.

Third, Plaintiffs allege that TUS participated in the conspiracy to fix prices of LCD panels, both of its own accord and through its corporate relationships with Chunghwa and Tatung Taiwan, and that TUS operated as part of a vertically integrated corporate group with Chunghwa and Tatung Taiwan:

- TUS participated directly in the price-fixing conspiracy at issue in this case. TAC ¶¶ 44-45, 86-87, 118; MAC ¶ 40.
- TUS actively furthered the conspiracy by acting as the sales agent for its corporate affiliate Chunghwa, an admitted cartel participant. In that role, TUS distributed products containing price-fixed LCD panels manufactured by Chunghwa into the United States. TAC ¶¶ 4, 43-45, 104, 182; MAC ¶¶ 10, 38-40, 102, 171.

- TUS operated and functioned as a single business enterprise with Tatung Taiwan and Chunghwa, with the three companies sharing common ownership, management, and directors. TAC ¶¶ 4, 43-45; MAC ¶¶ 10, 38-40.

In addition, a number of facts uncovered during the limited discovery conducted to date further demonstrate that TUS operated (and continues to operate) as part of a vertically integrated corporate group with Chunghwa and Tatung Taiwan:[2]

- TUS markets itself as a subsidiary of Tatung Taiwan. *E.g.*, Ex. A[3] at TUSP0009432; Ex. B at TUSP0009430; Ex. E, Chen Dep. Tr. 63:12-19.
- TUS features Tatung Taiwan's experience and extensive manufacturing operations as its own in marketing materials.[4]
- TUS represents that it runs a vertically integrated TFT-LCD business, which includes *Chunghwa's* factory.[5]
- Tatung Taiwan holds significant portions of both TUS and Chunghwa. *See* Ex. C at TUSP009356; Ex. D at TUSP0009381; Ex. G, Lai Dep. Tr. 7:8-25.
- TUS, Chunghwa, and Tatung Taiwan share common owners in and board members from the Lin Family. *See* Ex. G, Lai Dep. Tr. 7:8-25, 8:17-24, 19:8-20:4, 23:4-13, 24:11-15, 28:11-22.

---

[2] The class plaintiffs in this multidistrict litigation previously submitted a detailed statement of the factual record establishing the interconnections among TUS, Tatung Taiwan, and Chunghwa. *See* Pls.' Supplemental Br. in Opp. to Def. Tatung Co. of Am., Inc's Mot. to Dismiss (MDL Docket No. 854); Decl. of Jordan Elias in Support Thereof and the Exhibits Attached Thereto (MDL Docket No. 855) ("Elias Decl."). Those factual allegations are hereby incorporated by reference.

[3] References to Exhibits A-L are to the exhibits attached to the Elias Decl.

[4] *E.g.*, Ex. A at TUSP0009432; Ex. B at TUSP0009430; Ex. D at TUSP0009379, TUSP0009381-82, TUSP0009386, TUSP0009389; Ex. E, Chen Dep. Tr. 27:5-24, 28:10-15, 29:2-5; Ex. H at TUSP0026399; Ex. I at TUSP0002458; Ex. K at TUSP0024267-68, TUSP0024274, TUSP0024284.

[5] *E.g.*, Ex. A at TUSP0009432; Ex. B at TUSP0009430; Ex. E., Chen Dep. Tr. 47:19-22, 63:16-19; Ex. F, Tatung Taiwan and TUS's Rule 7.1(a) Disclosure Statement; Ex. H at TUSP0026399; Ex. I at TUSP0002458; Ex. K at TUSP0024267, TUSP0024273, TUSP0024282, TUSP0024289-90.

- TUS procured the majority of its LCD panels from Chunghwa in the past. Ex. E, Chen Dep. Tr. 80:8-9, 16-23.
- TUS has never sued Tatung Taiwan or Chunghwa. Ex. G, Lai Dep. at 27:13-17; Ex. E, Chen Dep. Tr. at 82:19-83:9.

This Court concluded previously that the facts set forth above defeat TUS's request for dismissal at this stage of litigation.

### III. ARGUMENT

#### A. TUS Does Not Qualify As A Direct Purchaser Under the Sherman Act.

Based on the Supreme Court's ruling in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that "indirect purchasers" of price-fixed products cannot sue under the federal antitrust laws, TUS first argues that it qualifies as a "direct purchaser" of LCD panels, and therefore, any claims brought against it by Plaintiffs are necessarily "indirect" in nature and consequently fall outside of the subject matter jurisdiction of this Court. But this Court held previously that TUS, as the corporate affiliate of Chunghwa and Tatung Taiwan, cannot stand in the position of a "direct purchaser." Thus, TUS's presence in the supply chain has no effect on this Court's subject matter jurisdiction over Plaintiffs' federal antitrust claims.

As the Ninth Circuit has held, and as this Court has accepted, "*Illinois Brick* does not bar an indirect purchaser's suit where the direct purchaser is a division or subsidiary of a co-conspirator." *See Royal Printing*, 621 F.2d at 326; *see also Freeman*, 322 F.3d at 1145-46 (applying *Royal Printing*). The Ninth Circuit's decision in *Royal Printing* is, as this Court noted, based on the premise that "*Illinois Brick's* rationale of preventing potentially duplicative recoveries from both direct and indirect purchasers does not apply where the direct purchaser is an affiliate of the corporation accused of an antitrust violation." TUS MDL Order at 2 (citing *Royal Printing*, 621 F.2d at 326; *Freeman*, 322 F.3d at 1145-46). The reason for this is that "there is no realistic possibility that the direct purchaser [in such a case] will sue its supplier over the antitrust violation." *Freeman*, 322 F.3d at 1145-46.

crowell moring
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
(213) 622-4750

Here, the allegations in Plaintiffs' complaints and the facts that are already on the record establish that TUS is a corporate affiliate of both Chunghwa and Tatung Taiwan, and that there is "no realistic possibility" that TUS will bring a Sherman Act claim against Chunghwa for its involvement in the LCD price-fixing conspiracy. *See supra* Statement of Facts, Section II.B, at 2-5. Thus, as this Court held previously, dismissal of the Sherman Act claims asserted against TUS is not warranted at this juncture. TUS "has not shown that it is not a proper defendant under *Royal Printing* and *Freeman*." TUS MTD Order at 2-3.

Moreover, TUS's self-serving declarations do nothing to change this outcome.[6] In fact, this Court already ruled as much with respect to the declarations of Messrs. Edward Chen and Michael Lai attached to TUS's earlier motion to dismiss by denying that motion and refusing to grant TUS's request for reconsideration.

Similarly, the new declaration offered by Mr. Chen adds nothing to TUS's argument. That declaration asserts only that "TUS does not now nor has it ever manufactured handsets or handheld devices containing LCD panels, including cell phones and PDAs" and that "TUS does not now nor has it ever sold handsets or handheld devices containing LCD panels, including cell phones and PDAs." Second Chen Declaration ¶¶ 2-3. Neither assertion explains why TUS should not be considered part of the same "vertically-integrated *corporate group* for Sherman Act purposes" as Chunghwa and Tatung Taiwan. *See* TUS Reconsideration Order at 2. And even if it is true that TUS never manufactured or sold handsets or handheld devices, it would not change the fact that TUS is jointly and severally liable for its co-conspirators' sales of such products as a matter of law. *See, e.g.*, *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1053 (9th Cir. 1981) ("[A]ntitrust coconspirators are jointly and severally

---

[6] TUS cites to three separate declarations in its motion. The first two declarations were submitted in connection with earlier motions. *See* Decl. of E. Chen (MDL Docket No. 471) ("First Chen Declaration"); Decl. of M. Lai (MDL Docket No. 472) ("Lai Declaration"). The third declaration was submitted in both the AT&T and Motorola matters in connection with the motions to dismiss at issue here. *See* Decl of E. Chen (AT&T Docket No. 36-1; Motorola Docket No. 26-1) ("Second Chen Declaration")

liable for all damages caused by the conspiracy.").[7] Thus, TUS does not become a "direct purchaser" under *Illinois Brick* simply because it may not have manufactured or sold handsets or handheld devices.

Plaintiffs respectfully submit that TUS's subject matter jurisdiction arguments should be rejected based on the prevailing law of *Royal Printing* and the inadequacy of the declarations on which TUS relies. However, to the extent the Court finds that Mr. Chen's most recent declaration raises factual issues, Plaintiffs seek to take discovery necessary to respond to those assertions and supplement their response. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." (quotations and citation omitted)).

> **B. Plaintiffs Have Alleged Legally Sufficient Claims Against TUS Under The Sherman Act.**

TUS next argues that Plaintiffs have failed to assert legally sufficient Sherman Act claims against TUS under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), because: (1) their complaints fail to allege that TUS participated in a conspiracy, and (2) their allegations do not adequately attribute Chunghwa's actions to TUS. This Court rejected the exact same arguments before, and should do so again here. *See* TUS MDL Order at 3.

As this Court has acknowledged, Federal Rule of Civil Procedure 8 requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

---

[7] *See also In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1439 (9th Cir. 1987) ("Antitrust defendants are jointly and severally liable for the acts of their coconspirators."), *rev'd on other grounds by California v. ARC Am. Corp.*, 490 U.S. 93 (1989); *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) ("All conspirators are jointly liable for the acts of their co-conspirators.").

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Id*.

Like the direct purchaser class plaintiffs before them, Plaintiffs here have met that standard. *See* TUS MTD Order at 2 ("To the extent that TUS contends that the complaint does not adequately allege its role in the alleged conspiracy, the Court rejects that argument . . . ."). Plaintiffs allege a number of facts concerning TUS's involvement in the underlying price-fixing conspiracy. First, Plaintiffs allege that TUS itself was involved in the conspiracy. TAC ¶¶ 44-45, 86-87, 118; MAC ¶¶ 40. Second, Plaintiffs allege that TUS participated in the conspiracy by acting as Chunghwa's sales agent in selling and distributing products containing price-fixed LCD panels manufactured by Chunghwa to customers in the Untied States. *See* TAC ¶¶ 4, 44-45, 86-87, 118; MAC ¶¶ 4, 38-40; *see also supra* Statement of Facts, Section II.B, at 2-5. Also, as discussed in detail above, Plaintiffs allege a close business relationship among the Tatung entities that suffices to state a claim against TUS. In particular, Plaintiffs allege that TUS and Chunghwa were (and continue to be) commonly owned, controlled, and dominated by Tatung Taiwan, with Tatung Taiwan employees acting as directors for and holding key management positions at each company. *See supra* Statement of Facts, Section II.B, at 2-5. As a result of the two companies operating as a single business enterprise under the corporate umbrella of Tatung Taiwan, TUS may be held liable to the same extent as Chunghwa, which pled guilty to price fixing.

This Court already recognized that such allegations are legally sufficient to assert a valid Sherman Act claim against TUS. *See* TUS MDL Order at 2-3. Therefore, TUS's motions to dismiss based on *Twombly* should be denied.

**C.      Plaintiffs Have Asserted Valid Claims Against TUS Under Various State Antitrust Laws.**

TUS next argues that certain of Plaintiffs' state-law antitrust claims fail for one or more of the following reasons: (1) Plaintiffs fail to assert a legally sufficient claim under a state statute; (2) Plaintiffs lack standing to bring claims under a state statute; and/or (3) Plaintiffs fail

to plead the requisite elements under a state statute. For the below reasons, TUS's arguments fail.

### 1. Plaintiffs Have Alleged Legally Sufficient Claims Against TUS Under Applicable State Antitrust Laws.

As with Plaintiffs' Sherman Act claims, TUS argues that Plaintiffs' state-law antitrust claims fail to meet the *Twombly* pleading standard. Because such claims rely on the identical factual assertions that support Plaintiffs' Sherman Act claims, for the same reasons set forth above, TUS's argument also fails here.

### 2. Plaintiffs Have Standing To Bring Their State-Law Antitrust Claims.

TUS also argues that Plaintiffs' claims brought under Illinois, Iowa, and Nebraska antitrust law fail because Plaintiffs do not meet the test for federal antitrust standing set forth by the Supreme Court in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). Their argument is without merit for a number of reasons.

First, with respect to Plaintiffs' antitrust claims brought under Illinois law, TUS fails to cite to any clear directive from the Illinois state legislature or Illinois Supreme Court that the *AGC* test should be applied to such claims. As this Court held previously, the *AGC* test is applicable only where such a clear directive exists. *See* Aug. 25, 2008 Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss Compls. (MDL Docket No. 666) ("Aug. 2008 Order") at 14. TUS's reliance on *County of Cook v. Philip Morris, Inc.*, 353. Ill. App. 3d 55, 62-63 (Ill. App. 2004), as support for their argument is misplaced for two reasons: (1) the case was decided by an intermediate appellate court, not the Illinois Supreme Court; and (2) the case did not actually adopt the *AGC* test, but rather discussed one element of the test in connection with a broader discussion of proximate cause.

Second, even if *AGC* were to apply to Plaintiffs' claims brought under Illinois, Iowa, and Nebraska law, this Court already concluded that factual allegations similar to those alleged here establish that a plaintiff "ha[s] standing under that [*AGC*] test, at least at the pleading stage."

Aug. 2008 Order at 14. This Court held that the indirect purchaser class plaintiffs "have demonstrated standing [with respect to state-law claims] because they have alleged the kind of injury that the antitrust laws were intended to address, namely that they were overcharged for products containing TFT-LCD panels as a result of defendants' horizontal price-fixing agreement" Aug. 2008 Order at 16. That is precisely what Plaintiffs allege here in connection with their state-law antitrust claims: defendants' price-fixing of LCD panels led Plaintiffs to pay artificially-inflated prices for LCD-containing products. *E.g.*, MAC ¶¶ 24, 148-50; TAC ¶¶ 6-7, 20, 159-62.

In particular, this Court held that, at the pleading stage, the indirect purchaser class plaintiffs' allegations satisfied the five factors set forth in the *AGC* test: "(1) the nature of plaintiffs' injuries and whether plaintiffs were participants in the relevant markets; (2) the directness of the alleged injury; (3) the speculative nature of the alleged harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." Aug. 2008 Order at 14-15 (citing *AGC*, 459 U.S. at 536-39).[8]

With respect to the first *AGC* factor, the Court found the indirect purchaser class plaintiffs' allegations to be "sufficient at this stage to weigh in favor of standing . . . ." Aug. 2008 Order at 15. In reaching that conclusion, the Court pointed to allegations that (1) the "market for LCD panels and the market for the products into which they are placed are inextricably linked and intertwined because the LCD panel market exists to serve the LCD products market," and (2) LCD Panels "have no independent utility, and have value only as components of other products, such as TVs, computer monitors, and laptops. The demand for LCD Panels thus directly derives from the demand for such products." *Id.* Plaintiffs here make identical allegations in their complaints. *See* MAC ¶¶ 75, 77; TAC ¶¶ 76, 78.[9]

---

[8] Although Plaintiffs here satisfy all five *AGC* factors, this Court is not required to find in favor of a plaintiff on each element of the *AGC* test, as long as the balance of factors weigh in the plaintiff's favor. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999) ("To conclude that there is antitrust standing, a court need not find in favor of the plaintiff on each factor.").

[9] Plaintiffs' amended complaints both state: (1) "LCD Panels have no independent utility, and have value only as components of other products, such as mobile wireless handsets, desktop

(continued…)

1   The Court also found that the indirect purchaser class plaintiffs' allegations that the
2 prices of LCD panels are "traceable" through LCD-containing products satisfied the second
3 through fifth elements of the *AGC* test.  *See* Aug. 2008 Order at 14-15.  Plaintiffs here similarly
4 make allegations relating to the traceability of LCD panel prices in their complaints:

- "Moreover, because LCD Panels are – and were throughout the Conspiracy Period – the most expensive and significant component of LCD Products, defendants knew that price increases for LCD Panels would necessarily result in increased prices for LCD Products sold in the United States."  MAC ¶ 135; TAC ¶ 137.
- "Defendants also monitored the prices for LCD Products sold in the United States, which they often referred to as 'street prices,' because defendants were aware that the conspiracy would elevate those prices in addition to the prices of LCD Panels."  MAC ¶ 136; TAC ¶ 138.
- "[D]efendants used LCD Product pricing in the United States as a benchmark for establishing, organizing, and tracking their price-fixing of LCD Panels."  MAC ¶ 136; TAC ¶ 138.
- "During the Conspiracy Period, defendants' and their co-conspirators' conspiracy also artificially inflated the price of LCD Panels ultimately incorporated into LCD Products purchased by [plaintiff] causing [plaintiff] to pay higher prices for such LCD Products than it would have in the absence of the conspiracy."  MAC ¶ 150; *see also* TAC ¶¶ 149.

Moreover, as this Court held previously, a determination on these issues is so "complex and intensely factual" that it would be inappropriate to determine without "a more fully

---

(continued)
computer monitors, notebook computer displays, laptop displays, and televisions.  The demand for LCD Panels thus derives directly from the demand for such products;" and (2) "The market for LCD Panels and the market for LCD Products . . . are inextricably linked and intertwined because the LCD Panel market exists to serve the markets for LCD Products . . . . The market for LCD Panels and the markets for LCD Products . . . are, for all intents and purposes, inseparable in that one would not exist without the other." MAC ¶¶ 75, 77; *see also* TAC ¶¶ 76, 78.

PLAINTIFFS' BRIEF IN OPPOSITION TO TATUNG'S MOTIONS TO DISMISS
PLAINTIFFS' AMENDED COMPLAINTS FOR DAMAGES AND INJUNCTIVE RELIEF

developed factual record." *See* Aug. 2008 Order at 16 (citing *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 410 (D. Del. 2007); *In re Graphics Process Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007)). Thus, at the very least, this Court should refrain from ruling on standing at this time.

Plaintiffs have asserted sufficient allegations to establish standing to bring their Illinois, Iowa, and Nebraska antitrust claims at this stage of litigation. As a result, TUS's standing argument should be rejected.

### 3. Plaintiffs Have Asserted Valid Claims Under California's Unfair Competition Law.

TUS also argues that Plaintiffs' claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, should be dismissed. TUS's argument fails for a number of reasons.

First, contrary to what TUS claims, Plaintiffs have alleged sufficient facts to support a finding that they have standing to bring claims under the "unlawful," "unfair," and "fraudulent" prongs of the UCL. At the pleading stage, a plaintiff can meet the standing requirements of the "unlawful" and "unfair" prongs by alleging proximate cause generally, i.e., that plaintiff: (1) suffered injury in fact, and (2) lost money as a result of unlawful or unfair competition. *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105-06 (N.D. Cal. 2007) (finding pleadings that alleged facts under one UCL prong sufficient to survive a motion to dismiss); *see also Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1096-97 (C.D. Cal. 2009) (finding standing under the UCL where a party alleged it suffered injury in fact and lost money or property as a result of unfair competition on the part of defendants). Thus, Plaintiffs' allegations that they were harmed by overcharges suffered on account of the defendants' anticompetitive actions suffice both to state a claim and to establish standing under the "unlawful" and "unfair" prongs of the UCL. *See Lauter*, 642 F. Supp. 2d at 1096-97 (finding standing); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d at 1105-06 (finding plaintiffs stated a UCL claim); *see also* TAC ¶ 192; MAC ¶ 203.

Under the "fraudulent" prong of the UCL, a plaintiff need only allege actual reliance on a defendant's fraudulent conduct to sufficiently plead standing. *See In re Tobacco II Cases*, 207

P.3d 20, 39-40 (Cal. 2009). Here, Plaintiffs each allege that "[b]ecause defendants' agreement, understanding and conspiracy were kept secret, [it was] unaware of defendants' unlawful conduct alleged herein and did not know that [it was] paying artificially high prices for LCD products." TAC ¶ 163; MAC ¶ 151. Moreover, Plaintiffs allege that, because of their reliance on defendants' public representations that legitimate market factors drove LCD panel price increases, they were unable to avoid paying higher prices for such products. *See* MAC ¶¶ 149, 154-60; TAC ¶¶ 149, 166-172 (alleging that the conspiracy caused plaintiff "to pay higher prices than it would have in the absence of defendants' conspiracy" and describing the various pretextual explanations defendants gave for pricing levels). Such allegations are sufficient to allege standing to pursue claims under the "fraudulent" prong of the UCL. *See In re Tobacco II Cases*, 207 P.3d at 40-41 (allegations that plaintiffs relied on misleading advertising campaign sufficed to establish actual reliance at the pleading stage).

Moreover, TUS's assertion that, in order to establish standing under the UCL, Plaintiffs must allege facts that show that their injuries can be traced directly back to TUS's unlawful, unfair, or fraudulent conduct in the form of direct purchases from TUS or actual reliance on TUS representations is misguided. Regardless of whether TUS sold directly to Plaintiffs, Plaintiffs allege TUS is nonetheless liable to them based on its participation in the conspiracy to fix LCD panel prices. *See* TAC ¶¶ 4, 44-45, 86-87, 118; MAC ¶¶ 4, 38-40; *see also* TAC Prayer for Relief ¶ B (requesting judgment be entered against defendants "jointly and severally"); MAC Prayer for Relief ¶ B (same). Contrary to what TUS claims, it, as a co-conspirator, can be held liable for violations of the UCL under a theory of joint and several liability. *Miletak v. Allstate Ins. Co.*, Case No. 06-cv-03778 JW, 2009 WL 137142, at *7-8 (N.D. Cal. May 15, 2009) (finding that a plaintiff stated a claim under the UCL based on allegations that defendant was jointly liable for its joint venturer's and co-conspirator's actions). Thus, Plaintiffs' allegations that TUS is liable for harms resulting from its participation in the conspiracy to fix the price of LCD panels are sufficient to state a claim under the UCL and establish Plaintiffs' standing to pursue that claim. *See id.*

Finally, contrary to what TUS claims, Plaintiffs' restatement and incorporation of allegations in support of their Sherman and Cartwright Act claims is sufficient to establish a claim under the UCL. It is well-established that the UCL "borrows violations of other laws, and makes them independently actionable as unfair competitive business practices." *Lauter*, 642 F. Supp. 2d at 1096. In fact, "[v]irtually any law, federal, state, or local, can serve as a predicate for an action under the UCL." *Id*. That includes both the Sherman and Cartwright Acts. *E.g.*, *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, Case No. 08-cv-529 JVS, -- F. Supp. 2d --, 2010 WL 1192438, at * 15 (C.D. Cal. Mar. 16, 2010) (UCL claim predicated on Sherman and Cartwright Act claims survived summary judgment where underlying antitrust claims also survived).

The cases on which TUS relies as support for its position are inapposite because each involved plaintiffs who failed to state a claim for a violation of a predicate federal, state, or local law, and it was that failure that precluded the plaintiffs from pursuing their UCL claims. *See Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 183-84 (Cal. Ct. App. 2002) (recognizing that the same conduct can be "both an antitrust violation and an 'unfair' business act or practice"); *see also In re Late Fees & Over-Limit Fees Litig.*, 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007) (dismissing UCL claims premised on violations of federal law where plaintiffs failed to allege a violation of federal law). Thus, Plaintiffs' reliance on the same allegations used to establish their Sherman and Cartwright Act claims is warranted and in no way bars their UCL claims.

For the reasons set forth above, Plaintiffs can, and have, stated valid claims under the UCL.

### 4. Plaintiffs State Valid Claims Under Hawaii Law Prior to June 25, 2002.

TUS also argues that the Court should dismiss Plaintiffs' claims brought under Haw. Rev. Stat. Ann. §§ 480-1 *et seq*. to the extent those claims are based on purchases from before the statute's amendment on June 25, 2002. However, TUS's argument ignores the fact that Plaintiffs assert claims under Hawaii law based both on the fact that TUS engaged in "unfair methods of competition" and on the fact that TUS engaged in "unfair or deceptive acts or practices." *See* TAC ¶ 194; MAC ¶ 190. Hawaii precedent makes clear that the state statute

allows plaintiffs to pursue claims based on "unfair or deceptive acts or practices" prior to June 28, 2002, and claims based on "unfair methods of competition" starting on June 28, 2002, because the statutory amendment passing Haw. Rev. Stat. Ann. § 480-2 on that date only relates to the latter. *See Hawaii Med. Ass'n v. Hawaii Med. Svc. Ass'n*, 148 P.3d 1179, 1209 (Haw. 2006) (clarifying that although private actions based on "unfair methods of competition" cannot be brought prior to the enactment of Haw. Rev. Stat. Ann. § 480-2 on June 28, 2002, private actions "based on unfair or deceptive acts or practices" prior to that amendment date are allowed) (citing *Sen. Stand. Comm. Rep*. No. 931, in 2001 *Senate Journal*, at 1295). Thus, Plaintiffs' claims under Hawaii law based on "unfair or deceptive practices" are permitted in their entirety throughout the relevant time period, while their claims based on "unfair methods of competition" are permitted after June 28, 2002.

### 5. Nebraska's *Illinois Brick* Repealer Statute Applies Retroactively.

TUS's assertion that Nebraska's *Illinois Brick* repealer statute, Neb. Rev. Stat. §§ 59-801 *et seq*., does not apply retroactively is also misplaced. Indeed, the very case on which TUS relies in its brief retroactively applied the statute. *See Arthur v. Microsoft Corp*., 267 Neb. 586, 603 (Neb. 2004) (Stephan, J., dissenting) (criticizing majority's retroactive application of the statute).

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully submit that the Court should deny Tatung Company of America, Inc.'s motions to dismiss.

DATED: April 16, 2010                                  Respectfully submitted,

By:  */s/ Jason C. Murray*
     Jason C. Murray (State Bar No. 169806)
     CROWELL & MORING LLP
     515 South Flower Street, 40th Floor
     Los Angeles, California  90071
     Telephone:   (213) 443-5582
     Facsimile:   (213) 622-2690
     Email:       jmurray@crowell.com

     Jeffrey H. Howard (*pro hac vice*)
     Jerome A. Murphy (*pro hac vice*)
     CROWELL & MORING LLP
     1001 Pennsylvania Avenue, N.W.
     Washington, D.C.  20004
     Telephone:   (202) 624-2500
     Facsimile:   (202) 628-5116
     Email:       jhoward@crowell.com
                  jmurphy@crowell.com

     Kenneth L. Adams (*pro hac vice*)
     R. Bruce Holcomb (*pro hac vice*)
     Christopher T. Leonardo (*pro hac vice*)
     Christopher H. Wood (*pro hac vice*)
     ADAMS HOLCOMB LLP
     1875 Eye Street, N.W.
     Washington, D.C.  20006
     Telephone:   (202) 580-8820
     Facsimile:   (202) 580-8821
     Email:       adams@adamsholcomb.com
                  holcomb@adamsholcomb.com
                  leonardo@adamsholcomb.com
                  wood@adamsholcomb.com

     *Counsel for Plaintiffs AT&T Mobility LLC, AT&T Corporation, AT&T Services, Inc., Bellsouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T Operations, Inc., AT&T Datacomm, Inc., Southwestern Bell Telephone Company, and Motorola, Inc.*